UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────x

JAMES SEABROOK, on his own behalf and on
behalf of others similarly situated,

        Plaintiff,

        -against-

CITY OF NEW YORK; LYNELLE
MAGINLEY-LIDDIE; LOUIS MOLINA;
VINCENT SCHIRALDI; CYNTHIA BRANN;
RONALD BRERERTON; and ANTHONY
MONASTERO,

        Defendants.
───────────────────────────────────────────x

24 Civ. 2029

**CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff James Seabrook, by and through his attorneys, Cuti Hecker Wang LLP, for his class action Complaint alleges as follows:

## NATURE OF THE ACTION

1. This case arises out of the official policy and practice of the City of New York (the "City") and the New York City Department of Correction ("DOC") of continuing the detention of persons who already have spent more time in custody prior to sentencing than the maximum term of imprisonment imposed, without affording any meaningful process for challenging their continued detention.

2. Freedom from bodily restraint is at the core of the liberty interest that is protected by the United States Constitution. The detention of a person for even a single day past his or her maximum term of imprisonment inflicts a harm of constitutional magnitude.

3. The City nevertheless regularly and knowingly detains individuals well past their maximum terms of imprisonment. This oft-repeated scenario arises when a criminal defendant is

1

incarcerated by DOC for a substantial period prior to his or her conviction and sentence; the person then is convicted and sentenced to a term of imprisonment and remanded back to DOC; and DOC knows or should know that the person has spent more time in custody than his or her maximum term of imprisonment and therefore is entitled to immediate release.

4. Despite the fact that continuing to detain such a person plainly violates the Constitution, the City's official policy and practice is nevertheless to continue to detain people who have exceeded their maximum sentences until they can be transferred to the physical custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), a process that often takes weeks.

5. The City provides no meaningful process for a person in this situation to challenge his or her continued detention. There is no meaningful way for a person in this situation to alert DOC that he or she already has served more than his or her maximum sentence and trigger a review process that leads to prompt release.

6. The City pretends that this official policy and practice supposedly is mandated by state law, but that is not true. As detailed below, state law provides that in calculating a sentence of imprisonment, a person must be credited with, and his or her sentence must be diminished by, the amount of time the person spent in custody prior to his or her sentencing as a result of the charge that culminated in the sentence. In order to facilitate this calculation, state law requires DOC to maintain accurate records regarding pre-sentencing time in custody. Even though DOC maintains such records and therefore knows full well that it regularly over-detains people who have served more time than their maximum terms of imprisonment, the City's official policy and practice is that only DOCCS may authorize their release, and that such authorization cannot

occur until they first are transferred to DOCCS custody and, in the parlance of the policy, physically "step in" to a DOCCS facility.

7. That is the unlawful practice to which Plaintiff James Seabrook was subjected. Mr. Seabrook was incarcerated by DOC for seven and a half years from his April 2016 arrest until December 2023, when he was acquitted of the most serious charges against him. He was convicted of non-violent weapons possession offenses that carried a maximum possible sentence of seven years, less time than he already had served in DOC custody. The court therefore appropriately released him, and he went home for a month and a half. When he was sentenced, however, DOC took him into custody and incarcerated him for another 17 days, even though DOC knew that he already had served significantly more time than his maximum sentence.

8. Mr. Seabrook now seeks redress against the City and the DOC officials who caused him to be detained in plain violation of the Constitution. The City and these officials pretend that their hands are tied by state law, but that is false. Defendants are making a choice to incarcerate and continue to detain people who they know have fully paid their debts to society.

9. This policy and practice has no legal basis, is plainly unconstitutional, and should be declared unlawful, and Mr. Seabrook and the class of persons he seeks to represent should be paid substantial monetary damages for their unnecessary suffering.

## JURISDICTION AND VENUE

10. This action arises under the United States Constitution and under 42 U.S.C. §§ 1983 and 1988.

11. This Court has jurisdiction pursuant to 28 U.SC. §§ 1331, 1343(a), and 1367.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

13. Plaintiff James Seabrook is an individual who currently resides in Massachusetts.

14. Defendant City of New York was and is a municipality that is a political subdivision of the State of New York. At all times relevant hereto, the City, acting through DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the appointment, training, supervision, and conduct of all DOC personnel. In addition, at all relevant times, the City was responsible for establishing the official policies and practices and enforcing the rules of the DOC.

15. Defendant Lynelle Maginley-Liddie, who is sued in her personal capacity, is the current Commissioner of DOC. As such, she is the chief executive of DOC. Upon information and belief, Defendant Maginley-Liddie was personally involved in the formulation and execution of the City's official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

16. Defendant Louis Molina, who is sued in his personal capacity, is a former Commissioner of DOC. As such, he was the chief executive of DOC. Upon information and belief, Defendant Molina was personally involved in the formulation and execution of the City's official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

17. Defendant Vincent Schiraldi, who is sued in his personal capacity, is a former Commissioner of DOC. As such, he was the chief executive of DOC. Upon information and belief, Defendant Schiraldi was personally involved in the formulation and execution of the

City's official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

18. Defendant Cynthia Brann, who is sued in her personal capacity, is a former Commissioner of DOC. As such, she was the chief executive of DOC. Upon information and belief, Defendant Brann was personally involved in the formulation and execution of the City's official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

19. Defendant Robert Brererton, who is sued in his personal capacity, is the current Deputy Commissioner of Security Operations of DOC. As such, he is the most senior DOC official responsible for custody management. Upon information and belief, Defendant Brererton was personally involved in the formulation and execution of the City's official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

20. Defendant Anthony Monastero, who is sued in his personal capacity, is a DOC Captain and the current head of the Custody Management Unit. As such, he is extensively involved in all day-to-day DOC custody management practices, decisions, and actions. Upon information and belief, Defendant Monastero was personally involved in the formulation and execution of the City's official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

21. Defendants Maginley-Liddie, Molina, Schiraldi, Brann, Brererton, and Monastero are collectively referred to herein as the "Individual Defendants."

**JURY DEMAND**

22. Plaintiffs hereby demand a trial by jury on all of their claims in this action.

**FACTUAL ALLEGATIONS**

Legal Framework

23. Penal Law § 70.00 requires that the sentence for most New York felony convictions must be an indeterminate sentence, with a prescribed minimum and maximum term of imprisonment.

24. Penal Law § 70.15 requires that the sentence for a New York misdemeanor conviction must be a definite sentence.

25. Penal Law § 70.20(1)(a) requires that a person sentenced to an indeterminate sentence must be imprisoned and serve his or her sentence in a DOCCS facility.

26. Penal Law § 70.20(2) requires that a person sentenced to a definite sentence must be imprisoned and serve his or her sentence in the applicable local correction institution.

27. Criminal Procedure Law § 430.20(4) prescribes a procedure for a sentencing court to determine, when a criminal defendant is being resentenced for a conviction after a prior sentence has been vacated, whether the defendant already has served more time than the resentence and/or is entitled to immediate conditional release based on good time credit, in which case the defendant is entitled to be released immediately from court.

28. The Criminal Procedure Law does not expressly prescribe a similar procedure for a sentencing court to determine, when a criminal defendant is being sentenced for a conviction in the first place, whether the defendant already has served more time than his or her maximum sentence and therefore is entitled to be released immediately from court.

29. Accordingly, the practice in New York City is for sentencing courts to issue orders of commitment remanding to the custody of DOC criminal defendants who have been sentenced for a conviction, even where it appears that the defendant already has served more time than his or her maximum sentence.

30. Where a sentenced person is placed in the custody of DOC, and where DOC knows or should know that the person already has served more time than his or her maximum sentence, DOC has an obligation under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution to immediately release the person.

31. Penal Law § 70.30, which is entitled "Calculation of terms of imprisonment," addresses how to calculate a term of imprisonment.

32. Penal Law § 70.30(1) provides with respect to determinate and indeterminate sentences, a term of imprisonment "commences when the prisoner is received in an institution under the jurisdiction of" DOCCS.

33. The subsections of Penal Law § 70.30(1) address various calculation complexities that arise when a person has been sentenced under more than one sentence.

34. Penal Law § 70.30(2) provides that with respect to definite sentences, a term of imprisonment "commences when the prisoner is received in the institution named in the commitment."

35. Penal Law § 70.30(3), which is entitled "Jail time," addresses how to calculate a term of imprisonment where a person already has spent time in custody prior to the commencement of the sentence as a result of the charge that culminated in the sentence.

36. Penal Law § 70.30(3) provides that "[t]he term of a definite sentence, a determinate sentence, or the maximum term of an indeterminate sentence imposed on a person

shall be credited with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence."

37. Thus, where a person is sentenced to a maximum term of imprisonment that is less than the amount of time he or she already has spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence, the term of imprisonment is diminished to zero, and the person is entitled to immediate release.

38. Correction Law § 600-a requires DOC to maintain accurate records of pre-sentencing incarceration time in order to facilitate the calculation required by Penal Law § 70.30(3).

The City's Unlawful Policy and Practice

39. The City has an official policy and practice of continuing the detention of persons who already have spent more time in custody prior to sentencing, as a result of the charges that culminated in the sentence, than the person's maximum term of imprisonment.

40. The City's official policy and practice is to continue the detention of such persons until they are transferred to DOCCS custody.

41. The City contends that this official policy and practice is compelled by Penal Law § 70.30(1), which, according to the City, supposedly means that only DOCCS can calculate a person's term of imprisonment and that DOCCS cannot calculate a term of imprisonment until the person is transferred to DOCCS custody and physically "steps in" to a DOCCS facility.

42. Penal Law § 70.30(1) does not support, much less compel, the City's official policy and practice.

43. Penal Law § 70.30(1) says nothing about *who* must calculate a person's term of imprisonment.

44. Penal Law § 70.30(1) says nothing about *when* a person's term of imprisonment must be calculated.

45. Penal Law § 70.30(1) says nothing about *where* a person must be when his or her term of imprisonment is calculated.

46. Penal Law § 70.30(1) merely provides that a sentence generally commences when a person is received by DOCCS, subject to Penal Law § 70.30(3), which provides that a person's term of imprisonment is diminished to zero if the person already has spent more time in custody prior to the commencement of the sentence than the maximum term of imprisonment as a result of the charge that culminated in the sentence.

47. Nothing in Penal Law § 70.30 says that only DOCCS may calculate a person's term of imprisonment.

48. Nothing in Penal Law § 70.30 says that a person's term of imprisonment may not be calculated until he or she is physically in a DOCCS facility.

49. By adopting an official policy and practice of continuing to detain persons who already have spent more time in custody than their maximum sentences, the City is making a conscious choice to abdicate its federal constitutional duty not to detain persons longer than their maximum sentences.

50. Penal Law § 70.30 does not support, much less compel, the City's official policy and practice because Penal Law § 70.30(3) provides that a sentence is diminished to zero if the person has been sentenced to a maximum term of imprisonment that is less than the amount of time he or she already has spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence.

51. It is unconstitutional to continue to detain a person where the person's sentence has been diminished to zero.

52. It is especially clear that the City's official policy and practice is unconstitutional given that DOC, not DOCCS, is the agency that possesses the information regarding the amount of time a person has spent in custody prior to the commencement of his or her sentence as a result of the charge that culminated in the sentence.

53. When DOC is aware that an individual has served more time in custody than his or her maximum sentence, federal law requires that he or she be immediately released.

54. The City contends that its official policy and practice also is compelled by the settlement agreement in *Calvin v. Abate*, Index No. 44831/1991 (New York Supreme Court, County of New York), but that is not so. The settlement agreement in *Calvin v. Abate* addresses the rights of people who have not served their maximum sentences to be transferred from DOC custody to DOCCS custody. Nothing in the *Calvin v. Abate* settlement agreement addresses the constitutional right of a person who has served his or her maximum sentence to be released from custody immediately.

Mr. Seabrook's Unlawful Detention

55. Mr. Seabrook was arrested on or about April 17, 2016.

56. Mr. Seabrook was subsequently charged with six crimes, including Criminal Possession of a Weapon in the Third Degree and Criminal Trespass.

57. On April 17, 2019, Mr. Seabrook was convicted of Criminal Possession of a Weapon in the Third Degree, and the jury hung on the greater offenses with which he was charged and tried.

58. Mr. Seabrook was re-tried on the hung charges in 2022, and the jury hung again.

59. On December 13, 2023, Mr. Seabrook was acquitted of all remaining charges against him.

60. Mr. Seabrook was released from DOC custody on December 13, 2023.

61. Upon his release, Mr. Seabrook had served more than 7.5 years in custody on Rikers Island.

62. On January 31, 2024, Mr. Seabrook was sentenced to an indeterminate sentence of 3.5 to 7 years for his 2019 conviction of Criminal Possession of a Weapon in the Third Degree. Seven years is the maximum possible sentence for that Class D non-violent felony.

63. At the time of his sentencing, Mr. Seabrook already had served more than his maximum sentence in DOC custody.

64. Notwithstanding that Mr. Seabrook already had served more than his seven-year maximum sentence, he was detained by DOC following his sentencing on January 31, 2024.

65. Mr. Seabrook languished on Rikers Island for 17 days, until February 16, 2024, when he was ultimately released.

66. For all of those 17 days, Mr. Seabrook was being detained unconstitutionally in excess of his maximum sentence.

67. For all of those 17 days, DOC knew that Mr. Seabrook was being detained unconstitutionally in excess of his maximum sentence.

68. Mr. Seabrook and his criminal defense lawyers notified numerous DOC officials of his unconstitutional detention.

69. On February 9, 2024, Mr. Seabrook's criminal defense lawyer notified a representative of DOC's Office of the General Counsel that Mr. Seabrook was being detained in excess of his maximum sentence and should be released immediately.

70. Mr. Seabrook's lawyer was told by a member of DOC's Office of the General Counsel that Mr. Seabrook was "awaiting transfer to state custody. Once he goes upstate his time will be calculated there. NYC DOC does not calculate state sentences."

71. Mr. Seabrook's lawyer wrote again to the member of the Office of the General Counsel on February 16, another seven days into Mr. Seabrook's unconstitutional detention. On the same day, one of Mr. Seabrook's criminal defense attorneys wrote to DOC Warden Caputo to notify him directly of Mr. Seabrook's unconstitutional detention and to demand his immediate release.

72. DOC Warden Caputo responded on February 16, copying members of the DOC Custody Management Unit, including Defendant Monastero, that members of DOC's Custody Management Unit had been working to "expedite" Mr. Seabrook's transfer to State custody "to no avail."

73. Defendant Monastero wrote to Mr. Seabrook's criminal defense attorneys on February 16 stating that they were waiting for DOCCS to authorize Mr. Seabrook's release because "we cannot neither release him nor transfer him to State DOCCS custody without their authorization."

74. Mr. Seabrook was released from DOC custody later that day, on February 16, 2024.

75. Mr. Seabrook suffered significant harm as a result of his unconstitutional detention for 17 days.

Class Allegations

76. Plaintiff brings this action on his own behalf and, pursuant to Federal Rules of Civil Procedure 23(b)(l), 23(b)(2), and 23(b)(3), on behalf of all persons who have been detained

by DOC in excess of their maximum sentences at any time during the applicable limitations period.

77. Upon information and belief, the proposed class is so numerous that joinder of all members is impracticable. Upon information and belief, the proposed class contains well more than 40 persons.

78. Pursuant to the City's official policy and practice, each putative class member was held in excess of his or her maximum term of imprisonment in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

79. Most of the putative class members are economically-disadvantaged, making individual lawsuits impracticable.

80. Judicial economy weighs in favor of avoiding multiple actions challenging the same policy and practice, particularly where individual suits could lead to potentially inconsistent results.

81. The putative class members are identifiable using records regularly maintained by DOC and DOCCS in the ordinary course of business.

82. Common questions of law and fact exist for all class members herein and predominate over any questions solely affecting individual members thereof.

83. Among the questions of law and fact common to members of the class are whether the City in fact maintains the official policy and practice alleged herein, whether such practice is legally justified, whether DOC is required to obtain authorization from DOCCS before releasing individuals who have served more time than their maximum determinate or indeterminate sentences, whether an individual who has served more time in DOC custody than his or her maximum determinate or indeterminate sentence must be transferred to a DOCCS

13

facility before he or she may be released, and whether the City affords a constitutionally adequate process, if any, for a person who has served more time in DOC custody than his or her maximum sentence to challenge his or her continued detention.

84. The City is expected to raise common defenses to the claims of all class members herein, including denying that its policy and practice violated the Constitution and/or that state law left them with no choice but to violate the Constitution.

85. Plaintiff's claims are typical of those of all putative class members herein, as Plaintiff's claims arise from the same municipal policy and practice and are based on the same legal theories as those of all putative class members.

86. The cause of Plaintiff's injuries was the same as the cause of the injuries suffered by all putative class members herein.

87. Maintaining this action as a class action is superior to other available methods because individual actions are not likely to be feasible.

88. Plaintiff is capable of fairly and adequately protecting the interests of all putative class members herein.

89. Counsel for Plaintiff is experienced in civil rights litigation, prisoners' rights litigation, complex litigation, and class actions.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 – Eighth Amendment**

90. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

91. Defendants were acting under color of law.

92. The City has an official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

93. The City pretends that its official policy and practice is compelled by state law, but that is not true.

94. By engaging in its official policy and practice, the City is making a choice to detain people beyond the maximum terms of imprisonment to which they were sentenced.

95. Plaintiff was detained beyond the maximum term of imprisonment to which he was sentenced.

96. By detaining Plaintiff beyond the maximum term of imprisonment to which he was sentenced, Defendants deprived him of his rights under the Eighth Amendment.

97. Defendants imposed punishment on Plaintiff with no penological justification.

98. Each of the Individual Defendants knew of and disregarded the fact that Plaintiff was being detained beyond his maximum sentence and were deliberately indifferent to the violation of his rights.

99. Plaintiff's excessive detention was directly and proximately caused by the City's unlawful official policy and practice.

100. Plaintiff's excessive detention was directly and proximately caused by the Individual Defendants' deliberate indifference to the violation of his rights.

101. As a result of the aforementioned conduct by Defendants, Plaintiff sustained damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 – Fourth Amendment

102. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

103. Defendants were acting under color of law.

104. The City has an official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

105. The City pretends that its official policy and practice is compelled by state law, but that is not true.

106. By engaging in its official policy and practice, the City is making a choice to detain people beyond the maximum terms of imprisonment to which they were sentenced.

107. Plaintiff was detained beyond the maximum term of imprisonment to which he was sentenced.

108. By detaining Plaintiff beyond the maximum term of imprisonment to which he was sentenced, Defendants seized him without justification in violation of the Fourth Amendment.

109. Each of the Individual Defendants knew of and disregarded the fact that Plaintiff was being detained beyond his maximum sentence and were deliberately indifferent to the violation of his rights.

110. Plaintiff's excessive detention was directly and proximately caused by the City's unlawful official policy and practice.

111. Plaintiff's excessive detention was directly and proximately caused by the Individual Defendants' deliberate indifference to the violation of his rights.

112. As a result of the aforementioned conduct by Defendants, Plaintiff sustained damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – Substantive Due Process

113. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

114. Defendants were acting under color of law.

115. The Fourteenth Amendment provides that no person may be deprived of liberty without due process of law.

116. Freedom from unlawful restraint is a right that is rooted in fundamental principles of ordered liberty.

117. The City has an official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

118. The City pretends that its official policy and practice is compelled by state law, but that is not true.

119. By engaging in its official policy and practice, the City is making a choice to detain people beyond the maximum terms of imprisonment to which they were sentenced.

120. Plaintiff was detained beyond the maximum term of imprisonment to which he was sentenced.

121. By detaining Plaintiff beyond the maximum term of imprisonment to which he was sentenced, Defendants deprived him of liberty without due process of law in violation of the Fourteenth Amendment.

122. Defendants' conduct was willful, wanton, arbitrary, and egregious.

123. Defendants' conduct shocks the conscience.

124. Each of the Individual Defendants knew of and disregarded the fact that Plaintiff was being detained beyond his maximum sentence and were deliberately indifferent to the violation of his rights.

125. Plaintiff's excessive detention was directly and proximately caused by the City's unlawful official policy and practice.

126. Plaintiff's excessive detention was directly and proximately caused by the Individual Defendants' deliberate indifference to the violation of his rights.

127. As a result of the aforementioned conduct by Defendants, Plaintiff sustained damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## 42 U.S.C. § 1983 – Procedural Due Process

128. Plaintiff hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

129. Defendants were acting under color of law.

130. The Fourteenth Amendment provides that no person may be deprived of liberty without due process of law.

131. Plaintiff had a protected liberty interest in being free from unlawful incarceration in excess of his maximum term of imprisonment.

132. Defendants failed to afford Plaintiff an adequate procedure for contesting the validity of his unlawful incarceration in excess of his maximum term of imprisonment.

133. Defendants afforded Plaintiff no process for demonstrating that he had served more time in custody than his maximum term of imprisonment.

134. The City has an official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment.

135. The City pretends that its official policy and practice is compelled by state law, but that is not true.

136. The City does not have any process in place through which over-detained individuals may grieve or otherwise challenge their over-detention.

137. Plaintiff was not afforded a hearing during his time in DOC custody after his sentencing to determine whether his continued incarceration was lawful.

138. By engaging in its official policy and practice, the City is making a choice to detain people beyond the maximum terms of imprisonment to which they were sentenced.

139. Plaintiff was detained beyond the maximum term of imprisonment to which he was sentenced.

140. Plaintiff was afforded no process through which to challenge his over-detention.

141. By detaining Plaintiff beyond the maximum term of imprisonment to which he was sentenced, and by failing to afford him any process through which to challenge his over-detention, Defendants deprived him of liberty without due process of law in violation of the Fourteenth Amendment.

142. Plaintiff's excessive detention was directly and proximately caused by the City's unlawful official policy and practice.

143. Plaintiff's excessive detention was directly and proximately caused by the Individual Defendants' deliberate indifference to the violation of his rights.

144. As a result of the aforementioned conduct by Defendants, Plaintiff sustained damages in an amount to be determined at trial.

WHEREFORE, Plaintiff requests that the Court grant the following relief:

a. Declare that the suit is maintainable as a class action pursuant to Federal Rules of Civil Procedure (b)(1), (b)(2), and (b)(3);

b. Declare that the City's official policy and practice is unlawful;

c. Award Plaintiff and all members of the class compensatory damages for all physical and emotional distress, anxiety, humiliation, injury to reputation, emotional harm, loss of liberty, and other harm in an amount to be determined at trial;

d. Award reasonable attorneys' fees and costs; and

e. Award such other and further relief as this Court may deem just and proper.

Dated: New York, New York
March 18, 2024

By:   /s/ Alice G. Reiter
Alice G. Reiter
Eric Hecker
Alexander Goldenberg
Daniel Mullkoff

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2604
areiter@chwllp.com
ehecker@chwllp.com
agoldenberg@chwllp.com
dmullkoff@chwllp.com

*Attorneys for Plaintiff and the Putative Class*