UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

JAMES SEABROOK, on his own behalf and on behalf of
others similarly situated,

                                 *Plaintiff*,

                         -against-

CITY OF NEW YORK; LYNELLE MAGINLEY-
LIDDIE; LOUIS MOLINA; VINCENT SCHIRALDI;
CYNTHIA BRANN; RONALD BRERERTON; and
ANTHONY MONASTERO,

                                 *Defendants*.

-------------------------------------------------------------------------x

24 Civ. 2029 (PKC)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iv

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS AND RELEVANT PROCEDURAL BACKGROUND .................. 2

STANDARD OF LAW......................................................................................................... 4

ARGUMENTS..................................................................................................................... 6

POINT I

ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED
BECAUSE PLAINTIFF HAS NOT SUFFICIENTLY
ALLEGED A CONSTITUIONAL VIOLATION IN LIGHT OF
THE CRIMINAL COURT ORDER REQUIRING DOC TO
DETAIN PLAINTIFF AND DELIVER HIM TO DOCCS AND,
AT THE VERY LEAST, THE INDIVIDUAL DEFENDANTS
ARE ENTITLED TO QUALIFIED IMMUNITY**.......................................................... 6**

  A.  Plaintiff Cannot Establish a Constitutional Violation................................ 6

  B.  The Individual Defendants Are Entitled to Qualified Immunity................9

POINT II

PLAINTIFF'S EIGHTH AMENDMENT CLAIM FURTHER
FAILS BECAUSE HE FAILS TO SUFFICIENTLY ALLEGE
DELIBERATE INDIFFERENCE ...................................................................... 11

POINT III

PLAINTIFF CANNOT STATE A PLAUSIBLE CLAIM UNDER
THE FOURTH AMENDMENT......................................................................... 13

POINT IV

PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED.............. 14

  A.  Plaintiff's Substantive Due Process Claim Should Be Dismissed ........... 14

  B.  Plaintiff's Procedural Due Process Claim Should Be Dismissed.............. 15

POINT V

    PLAINTIFF HAS FAILED TO ALLEGE SUFFICIENT FACTS
    TO ESTABLISH THAT THE INDIVIDUAL DEFENDANTS
    WERE PERSONALLY INVOLVED IN THE ALLEGED
    CONSTITUTIONAL VIOLATION ................................................................... 17

POINT VI

    THE CITY OF NEW YORK SHOULD BE DISMISSED
    AS A DEFENDANT ........................................................................................... 20

POINT VII

    THE PURPORTED CLASS ACTION SHOULD BE DISMISSED ................... 21

CONCLUSION ..................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*Abernathy v. Comm'r of Corr.*, No. 3:20-cv-00628 (VAB),
2021 U.S. Dist. LEXIS 64738 (D. Conn. Apr. 2, 2021) ........................................................19, 20

*Achtman v. Kirby, McInerney Squire*, 464 F.3d 328 (2d Cir. 2006) ..................................................5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). .......................................................................................4, 5

*Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407 (S.D.N.Y. 2014) .................................................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................4, 5

*Bradway v. Gonzales*, 26 F.3d 313 (2d Cir. 1994) ........................................................................10

*Bueno v. Eurostars Hotel Co.*, 21-cv-535 (JGK) (S.D.N.Y. Jan. 7, 2022) ......................................5

*Carrion v. Singh*, No. 12 CV 360, 2013 U.S. Dist. LEXIS 34181 (E.D.N.Y. Feb. 21, 2013) ........6

*Castro v. Windham*, No. 1-16-cv-08148 (LTS) (KHP),
2017 U.S. Dist. LEXIS 153376 (S.D.N.Y. Sept. 19, 2017)...............................................................6

*Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 FB VVP,
2014 U.S. Dist. LEXIS 46007, 2014 WL 1338315 (E.D.N.Y. Apr. 2, 2014) .............................23

*Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*, No. 17-Cv-840 (VSB),
2023 U.S. Dist. LEXIS 57138 (S.D.N.Y. Mar. 31, 2023) .............................................................22

*City & County of San Francisco v. Sheehan*, 575 U.S. 600 (2015)................................................10

*Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994)............................................................................21

*Dorsett v. County of Nassau*, No. 11-CV-5748 (SJF)(GRB),
2013 U.S. Dist. LEXIS 9823 (E.D.N.Y. Jan. 24, 2013) ...............................................................20

*Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309 (S.D.N.Y. 2020) ..........................................5

*Ferran v. Town of Nassau*, 471 F.3d 363 (2d Cir. 2006)................................................................14

*Francis v. Fiacco*, No. 15-CV-901, 2018 U.S. Dist. LEXIS 43264 (N.D.N.Y. Mar. 16, 2018),
*rev'd and remanded on other grounds*, 942 F.3d 126 (2d Cir. 2019) ......................................13, 15

*Garrett v. Cummberbatch*, No. 23-CV-2343 (LTS),
2023 U.S. Dist. LEXIS 88628 (S.D.N.Y. May 22, 2023)........................................................ 14-15

*Giraldo v. Kessler*, 694 F.3d 161 (2d Cir. 2012) ...........................................................................6

*Gonzalez v. City of Schenectady*, 728 F.3d 139 (2d Cir. 2013) ....................................................10

*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) ..........................................................................5

*Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021) ...............................................................12, 13

*In re IPO Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) .........................................................................22

*In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38 (S.D.N.Y. 2012)........................................................22

*In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 305 (S.D.N.Y. 2010).............................................22

*Irvin v. Harris*, 944 F.3d 63 (2d Cir. 2019) ................................................................................21

*Jackson v. Annucci*, No. 19 CV 2013 (VB),
2020 U.S. Dist. LEXIS 31497 (S.D.N.Y. Feb. 24, 2020).............................................................12

*Kaluczky v. City of White Plains*, 57 F.3d 202 (2d Cir. 1995)......................................................14

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ............................................................6

*Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88 (2d Cir. 2018) .......................21

*McFadden v. New York*, No. 10-CV-141 (RRM)(CLP),
2011 U.S. Dist. LEXIS 149125 (E.D.N.Y. Dec. 28, 2011) ...........................................................6

*McLaughlin v. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)..............................................................22

*Mullenix v. Luna*, 577 U.S. 7 (2015)..........................................................................................10

*Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26 (2d Cir. 2012).........................................24

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)..................................................................................10

*Press v. Primavera*, 685 F. Supp. 3d 216 (S.D.N.Y. 2023)..........................................................6

*Raspardo v. Carlone*, 770 F.3d 97 (2d Cir. 2014) .......................................................................19

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008)..................................................................20

*Simms v. N.Y.C. Dept. of Educ.*, No. 18-cv-3964,
2019 WL 280516 (S.D.N.Y. Jan. 21, 2019) .................................................................................5

*Sinclair v. Goord*, No. 9:07-CV-1317 (LEK/RFT),
2009 U.S. Dist. LEXIS 67901 (N.D.N.Y. Mar. 10, 2009)..........................................................21

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d. Cir. 2002) .......................................5

*Southerland v. City of New York*, 680 F.3d 127 (2d Cir. 2012)....................................................14

*Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127 (2d Cir. 2013)....................................17

*Stein v. Pruyne*, No. 15-CV-7039 (CS),
2020 U.S. Dist. LEXIS 115419 (S.D.N.Y. June 29, 2020)..........................................................13

*Stewart v. Hudson Hall LLC*, No. 20CIV885PGGSLC,
2021 U.S. Dist. LEXIS 230033, 2021 WL 6285227 (S.D.N.Y. Nov. 29, 2021).........................23

*Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)....................................................................19

*Taravella v. Town of Wolcott*, 599 F.3d 129 (2d Cir. 2010).........................................................10

*Wallace v. Conroy*, 945 F. Supp. 628 (S.D.N.Y. 1996).......................................................8, 9, 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...............................................21, 23

*Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467 (S.D.N.Y. 2019) ......................5

*Washington v. Piper*, No. 18 CV 7783 (NSR),
2019 U.S. Dist. LEXIS 206338 (S.D.N.Y. Nov. 26, 2019) ...........................................9

*White v. Pauly*, 137 S. Ct. 548 (2017) ...............................................10

*Williams v. Novoa*, No. 19-CV-11545 (PMH),
2021 U.S. Dist. LEXIS 22941 (S.D.N.Y. Feb. 5, 2021) ...........................................12

*Whyte v. N.Y. State Police*, 22-CV-05633 (NGG) (CLP) (E.D.N.Y. Nov. 9, 2023) ......................5

## **STATUTES**

42 U.S.C. § 1983 ...............................................1, 11, 15, 17

Fed. R. Civ. P. 23(a) ...............................................2, 22

Fed. R. Civ. P. 23(b)(3) ...............................................22

New York Corrections Law § 601(a) ...............................................8

New York Penal Law § 70.30(1) ...............................................9

## PRELIMINARY STATEMENT

On May 6, 2016, Plaintiff James Seabrook was arrested for, *inter alia*, Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree and Third Degree, and Criminal Trespass in the Third Degree. Plaintiff was subsequently convicted of, *inter alia*, Criminal Possession of a Weapon in the Third Degree and Criminal Trespass in the Third Degree and, on January 31, 2024, he was sentenced to an indeterminate sentence of 3.5 to 7 years. Although Plaintiff had already served 7.5 years in custody at the time of his sentencing, the New York County Criminal Court did not order Plaintiff's immediate release, and Plaintiff does not allege that he ever asked the Criminal Court to order his immediate release. Rather, as Plaintiff conveniently and crucially fails to discuss in his Amended Complaint, the Criminal Court committed Plaintiff to the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and directed the New York City Department of Correction ("DOC") to detain Plaintiff and deliver him to the custody of DOCCS. Thus, DOC could not simply release the Plaintiff on its own accord, as doing so would directly violate the Criminal Court's Order as well as applicable state law. DOC made the required notification to DOCCS within at least seven (7) business days of taking Plaintiff into custody. On the very same day that DOCCS notified DOC that Plaintiff could be released, DOC released the Plaintiff.

Now, Plaintiff brings this lawsuit, pursuant to 42 U.S.C. § 1983, completely ignoring the existence and mandate of the Criminal Court Order, and asserting claims under the Eighth Amendment, Fourth Amendment, and Fourteenth Amendment, against Defendants City of New York, DOC Commissioner Lynelle Maginley-Liddie, Former DOC Commissioners Louis Molina, Vincent Schiraldi, and Cynthia Brann, DOC Deputy Commissioner of Security Operations Ronald

Brereton, and DOC Custody Management Captain Anthony Monastero (collectively, hereinafter "Defendants") on the grounds that they unconstitutionally detained him for a period of 17 days.

However, all of Plaintiff's claims should be dismissed, with prejudice, because Plaintiff has not sufficiently alleged a constitutional violation (nor can he) in light of the Criminal Court Order requiring DOC to detain Plaintiff and deliver him to DOCCS and, at the very least, the individual defendants are entitled to qualified immunity.  Plaintiff's Eighth Amendment claim further fails because he has not sufficiently alleged deliberate indifference.  Plaintiff's Fourth Amendment claim further fails because it is not a proper claim here, as Plaintiff has acknowledged. Plaintiff's Fourteenth Amendment due process claims further fail because Plaintiff cannot properly allege that his detention was egregious, outrageous, arbitrary or conscience-shocking since it was mandated by the Criminal Court, that he had a sufficient liberty interest, and/or that constitutionally sufficient procedures were unavailable to him.  Plaintiff has also failed to allege sufficient facts to establish that the individual defendants were personally involved in the alleged constitutional violation   In addition, the City of New York should be dismissed as a defendant because Plaintiff has not specifically asserted a municipal liability claim against it and, even if he had, Plaintiff has failed to allege any underlying constitutional violation and further, in any event, the alleged delay was not caused by any City policy or practice but rather by, *inter alia*, the terms of the Criminal Court Order.  Finally, the purported class action should be dismissed because Plaintiff lacks standing and has not and cannot meet the requirements of Fed. R. Civ. P. 23(a).

## STATEMENT OF FACTS AND
## RELEVANT PROCEDURAL BACKGROUND

Plaintiff alleges that he was arrested on May 6, 2016, and "charged with six crimes, including Criminal Possession of a Weapon in the Third Degree and Criminal Trespass."

Amended Complaint at ¶ 68 (hereinafter "Am. Compl."). Plaintiff further alleges that, on April 17, 2019, he "was convicted of Criminal Possession of a Weapon in the Third Degree, and the jury hung on the greater offenses with which he was charged and tried." *Id.* at ¶ 69. Plaintiff alleges that he "was re-tried on the hung charges in 2022, and the jury hung again." *Id.* at ¶ 70. "On December 13, 2023, [Plaintiff] was acquitted of all outstanding charges against him" and, that very same day, was "released from DOC custody." *Id.* at ¶¶ 71-72.

Plaintiff alleges that, on January 31, 2024, he "was sentenced to an indeterminate sentence of 3.5 to 7 years for his 2019 conviction of Criminal Possession of a Weapon in the Third Degree." *Id.* at ¶ 74. However, the New York Supreme Court for the County of New York ("Criminal Court") Sentencing and Commitment Order ("Criminal Court Order") indicates that Plaintiff was also convicted and sentenced for Criminal Trespass in the Third Degree and Unlawful Possession of Ammunition. *See* Sentencing and Commitment Order, attached to the Declaration of Dayrel S. Sewell ("Sewell Decl.") as Exhibit A. The Criminal Court Order further indicates that Plaintiff had previously been charged with, *inter alia*, Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. *See id.*

Although Plaintiff alleges that he already "had served more than 7.5 years in DOC custody" and, thus, "already had served more than his maximum sentence in DOC custody," the Criminal Court did not order Plaintiff's immediate release, nor does Plaintiff allege that he asked the Criminal Court to order his immediate release. *See id.*; Am. Compl. at ¶¶ 73, 75. Rather, the Criminal Court ordered that Plaintiff:

> **BE AND HEREBY IS COMMITTED TO THE CUSTODY OF THE:** NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older <u>not presently in the custody of NYSDOCS</u>, (New York City Department of Corrections) is directed to deliver the [Plaintiff] to the custody of NYSDOCS as provided in 7 NYCRR Part 103.

Sentencing and Commitment Order, Sewell Decl., Exh. A (emphasis in original).

On the same day as Plaintiff's January 31, 2024 sentencing, instead of requesting that Plaintiff be immediately released, Plaintiff's criminal defense attorney, with the understanding that Plaintiff would need to be transferred from DOC to DOCCS and could not be immediately released by DOC, requested that the Criminal Court direct DOCCS "to refrain from cutting [his] hair upon his admission to its custody and control." Affirmation, Sewell Decl., Exh. C.

On February 9, 2024, Plaintiff's counsel was informed that DOC was waiting for DOCCS to take custody of Plaintiff. Am. Compl. at ¶ 82. On February 16, 2024,[1] DOCCS issued a Letter of No Further Interest, which stated that Plaintiff "has been discharged from the sentence imposed pursuant to indictment number 2127-16/001." Letter of No Further Interest, Sewell Decl., Exh. B. DOC released Plaintiff Seabrook that very same day. Am. Compl. at ¶¶ 77, 86.

On August 26, 2024, pursuant to the Court's Individual Practices in Civil Cases, Defendants filed a pre-motion letter with respect to this motion to dismiss. *See* Dkt. No. 36. On August 27, 2024, Plaintiff filed his opposition to Defendants' pre-motion letter and specifically stated that he did "not intend to seek leave to amend his pleading in response to Defendants' letter." Dkt. No. 40.

## **STANDARD OF LAW**

"[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

---

[1] Although inadvertently dated January 16, 2024, the correct date of the DOCCS Letter of No Further Interest pertaining to Plaintiff is February 16, 2024, as is made clear by the transmittal e-mail.

complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 321 (S.D.N.Y. 2020) (citing *Twombly*, 550 U.S. at 558).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (*Iqbal*, 556 U.S. at 678) but such inference is "inapplicable to legal conclusions."  *See Bueno v. Eurostars Hotel Co.*, 21-cv-535 (JGK) (S.D.N.Y. Jan. 7, 2022); *see also Simms v. N.Y.C. Dept. of Educ.*, No. 18-cv-3964, 2019 WL 280516 (S.D.N.Y. Jan. 21, 2019).  The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Walsh v. Scarsdale Union Free Sch. Dist.*, 375 F. Supp. 3d 467, 483 (S.D.N.Y. 2019) (citing *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney Squire*, 464 F.3d 328 (2d Cir. 2006) (citing *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir. 2002)).  A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The complaint "must contain facts that do more than present a 'sheer possibility that a defendant has acted unlawfully'." *Farmer*, 473 F. Supp. 3d at 321; *see Whyte v. N.Y. State Police*, 22-CV-05633 (NGG) (CLP), at *8 (E.D.N.Y. Nov. 9, 2023).

Conclusory allegations are "not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150,161 (2d Cir. 2010); *see Whyte*, 22-CV-05633, at *8 (E.D.N.Y. 2023).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 425 (S.D.N.Y. 2014) (citing *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

Furthermore, "[i]n ruling on a motion to dismiss, the court may take judicial notice of state court orders." *Castro v. Windham*, No. 1-16-cv-08148 (LTS) (KHP), 2017 U.S. Dist. LEXIS 153376, at *6 (S.D.N.Y. Sept. 19, 2017) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may take judicial notice of matters in the public record)); *see also, e.g., Carrion v. Singh*, No. 12 CV 360, 2013 U.S. Dist. LEXIS 34181, at *4 (E.D.N.Y. Feb. 21, 2013) (noting that in adjudicating on motion to dismiss, court may take judicial notice of state court orders, and collecting cases). The Court may also take judicial notice of criminal court filings. *See, e.g., Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts."); *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023) ("Courts in this District routinely take judicial notice, on a motion to dismiss, of public filings like this, including filings made on court dockets."); *McFadden v. New York*, No. 10-CV-141 (RRM)(CLP), 2011 U.S. Dist. LEXIS 149125, at *1 (E.D.N.Y. Dec. 28, 2011) ("Where applicable, the Court takes judicial notice of state court and other filings, as matters of public record.").

## **ARGUMENT**

### **POINT I**

#### **ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT SUFFICIENTLY ALLEGED A CONSTITUIONAL VIOLATION IN LIGHT OF THE CRIMINAL COURT ORDER REQUIRING DOC TO DETAIN PLAINTIFF AND DELIVER HIM TO DOCCS AND, AT THE VERY LEAST, THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY**

#### **A. Plaintiff Cannot Establish a Constitutional Violation**

All of Plaintiff's claims are premised on the assertion that Defendants made the "choice to detain [him] beyond the maximum term[] of imprisonment to which [he was] sentenced." Am.

Compl. at ¶¶ 106, 118, 131, 150.   But, crucially, Plaintiff's Amended Complaint fails to acknowledge that the Criminal Court Order required DOC to detain Plaintiff and deliver him to DOCCS.  *See* Sentencing and Commitment Order, Sewell Decl., Exh. A.  Thus, DOC did not make the "choice" to detain Plaintiff and, furthermore, DOC could not have simply released the Plaintiff on its own volition, as Plaintiff contends DOC should have done, as doing so would have run afoul of the Criminal Court Order.  Rather, DOC could not release Plaintiff unless and until DOCCS (or the Criminal Court) informed DOC that Plaintiff could be released.  Plaintiff knew this.  Indeed, Plaintiff clearly understood that he could not and would not be immediately released by DOC, but rather that he needed to be placed in DOC custody for transfer to DOCCS custody.  That is why Plaintiff's criminal defense attorney asked the Criminal Court to direct DOCCS not to cut Plaintiff's hair upon his admission to its custody and control.  *See* Affirmation, Sewell Decl., Exh. C.

On the very same day that DOCCS notified DOC that Plaintiff could be released, DOC released him.  *See* Letter of No Further Interest, Sewell Decl., Exh. B; Am. Compl. at ¶¶ 77, 86. As hard as he tries to pull the wool over this Court's eyes, Plaintiff cannot escape the fact that the Criminal Court did not order Plaintiff's immediate release, and Plaintiff does not even allege that he ever asked the Criminal Court to order his immediate release.

As a result, the proper inquiry for the Court here is not whether DOC should have detained Plaintiff in the first place or whether DOC should have immediately released Plaintiff on its own volition but rather, given the clear and unambiguous terms of the Criminal Court Order directing DOC to detain Plaintiff and deliver him to the custody of DOCCS, whether the (at most) seven business days within which DOC notified DOCCS that Plaintiff was to be transferred to DOCCS custody was so long as to constitute a constitutional violation, as any delay beyond those (at most)

seven business days would be attributable to DOCCS in determining that Plaintiff could be released and informing DOC of that.  Pursuant to the applicable case and statutory law, the only answer is no.

Indeed, in *Wallace v. Conroy*, 945 F. Supp. 628, 635 (S.D.N.Y. 1996), the court explained that neither statutory law nor case law requires "the City to transfer state-ready prisoners within a specific period of time" and ultimately found that there is "no liberty interest in a ten to fourteen-day transfer" from DOC to DOCCS from the time of sentencing, as the plaintiff in that case, who alleged a twenty day transfer delay, had argued.

As the *Wallace* court observed, there is no legal requirement for DOC to transfer a convicted and sentenced inmate, like Plaintiff here, within any particular amount of time.  This is unsurprising given the extensive amount of information and documentation that must be delivered by DOC to DOCCS when transferring an inmate pursuant to an indeterminate sentence:

> Whenever an incarcerated individual shall be delivered to the superintendent of a state correctional facility pursuant to an indeterminate or determinate sentence, the officer so delivering such incarcerated individual shall deliver to such superintendent, the sentence and commitment or certificate of conviction, or a certified copy thereof, and a copy of any order of protection pursuant to section 380.65 of the criminal procedure law received by such officer from the clerk of the court by which such incarcerated individual shall have been sentenced, a copy of the report of the probation officer's investigation and report or a detailed statement covering the facts relative to the crime and previous  history certified by the district attorney, a copy of the incarcerated individual's fingerprint records, a detailed summary of available medical records, psychiatric records and reports relating to assaults, or other violent acts, attempts at suicide or escape by the incarcerated individual while in the custody of the local correctional facility; any such medical or psychiatric records in the possession of a health care provider other than the local correctional facility shall be summarized in detail and forwarded by such health care provider to the medical director of the appropriate state correctional  facility upon  request; the superintendent shall present to such officer a certificate of the delivery of such incarcerated individual, and the fees of such officer for transporting such incarcerated individual shall be paid from the treasury upon the audit and warrant of the comptroller.

N.Y. Corrections Law § 601(a).

As a result, it cannot be said that the (at most) seven business days between the time DOC detained Plaintiff and notified DOCCS that Plaintiff needed to be taken into custody was unreasonable, let alone unconstitutional.  Moreover, even if the Court considered the fully alleged 17-day delay, plaintiff's claims still fail.  *See, e.g., Wallace*, 945 F. Supp. at 635 (dismissing plaintiff's claims alleging that DOC unconstitutionally delayed his transfer to DOCCS for 20 days from the time of sentencing).

Plaintiff also fails to acknowledge that, pursuant to New York Penal Law § 70.30(1), Plaintiff's indeterminate sentence of imprisonment did not and could not even commence until he was "received in an institution under the jurisdiction of the state department of corrections and community supervision."  Thus, even though Plaintiff alleges that he was detained by DOC beyond the maximum term of imprisonment to which he was sentenced, in fact, Plaintiff's sentence had not even commenced because he had not yet been in DOCCS custody.  As a result, Plaintiff's claims rest on the absurd contention that DOC should have released Plaintiff on its own volition in violation of the Criminal Court Order and before Plaintiff's sentence had even technically commenced.

Accordingly, all of plaintiff's claims should be dismissed.

**B.  The Individual Defendants Are Entitled to Qualified Immunity**

"The Supreme Court has urged courts to decide the issue of qualified immunity at the earliest possible opportunity."  *Washington v. Piper*, No. 18 CV 7783 (NSR), 2019 U.S. Dist. LEXIS 206338, at *14-15 (S.D.N.Y. Nov. 26, 2019).

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was

objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). "The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 139, 144 (2d Cir. 2013) (citing *Taravella v. Town of Wolcott*, 599 F.3d 129, 133-34 (2d Cir. 2010)). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (emphasis added). Qualified immunity is intended to give "government officials breathing room to make reasonable but mistaken judgments," and it "protects all but the plainly incompetent or those who knowingly violate the law." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 611 (2015).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (omission in original) (citation and internal quotation marks omitted); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017) (reiterating "the longstanding principle that 'clearly established law" should not be defined 'at a high level of generality'" and holding that the "clearly established" showing requires the identification of at least one case "where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment").

Here, the individual defendants are entitled to qualified immunity first because there is no clearly established law that DOC, or any correctional facility, may disregard a criminal court order

and, on its own volition, release an inmate it was directed to take into custody and transfer to another facility. Nor was it objectively unreasonable for the individual defendants to believe that they could not simply ignore the mandate of the Criminal Court Order. Quite simply, there is no legal authority which required, or even permitted, DOC to release Plaintiff absent authorization from DOCCS or the Criminal Court where the Criminal Court Order explicitly directed DOC to detain Plaintiff and transfer him to DOCCS custody.

The individual defendants are further entitled to qualified immunity because there is no clearly established law that an alleged 17-day (12 business day) delay, let alone a nine-day (seven business day) delay, in transferring an inmate from DOC custody to DOCCS custody is unreasonable, let alone unconstitutional. On the contrary, as discussed above, the applicable case and statutory law sets forth no mandatory deadline, and courts in this Circuit have dismissed claims based on lengthier alleged delays. *See, e.g., Wallace*, 945 F. Supp. at 635. Moreover, it was not objectively unreasonable for the individual defendants to believe that they were not constitutionally required to ensure Plaintiff's transfer within any particular period of time, and certainly not in less than nine days.

Accordingly, the individual defendants are entitled to qualified immunity on all of plaintiff's claims.

## POINT II

### PLAINTIFF'S EIGHTH AMENDMENT CLAIM FURTHER FAILS BECAUSE HE FAILS TO SUFFICIENTLY ALLEGE DELIBERATE INDIFFERENCE

"A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements. First, the alleged deprivation must be, in objective terms, sufficiently serious.

Second, the charged official must act with a sufficiently culpable state of mind." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1084 (2d Cir. 2021) (internal quotation marks and citation omitted). "[A]n Eighth Amendment violation typically requires a state of mind that is the equivalent of criminal recklessness." *Id.* (internal quotation marks and citation omitted). Moreover, for an alleged "'extended incarceration to rise to the level of an Eighth Amendment violation, it must . . . be the product of deliberate indifference.'" *Williams v. Novoa*, No. 19-CV-11545 (PMH), 2021 U.S. Dist. LEXIS 22941, at *17-18 (S.D.N.Y. Feb. 5, 2021) (citation omitted); *see also, e.g., Jackson v. Annucci*, No. 19 CV 2013 (VB), 2020 U.S. Dist. LEXIS 31497, at *5 (S.D.N.Y. Feb. 24, 2020) ("To state an Eighth Amendment claim based on prolonged incarceration, plaintiff must allege 'defendants were deliberately indifferent to his' prolonged detention.") (citation omitted).

While Plaintiff alleges that "[e]ach of the Individual Defendants knew of and disregarded the fact that Plaintiff was being detained beyond his maximum sentence and were deliberately indifferent to the violation of his rights," Am. Compl. at ¶ 110, this conclusory and boilerplate allegation falls woefully short of the applicable pleading standards. Plaintiff fails to allege sufficient facts to establish knowledge or deliberate indifference, or that any of the defendants acted with a culpable state of mind.

Also, Plaintiff cannot plausibly do so because, as discussed, the Criminal Court directed DOC to detain Plaintiff and transfer him to the custody of DOCCS. Moreover, DOC released Plaintiff on the very same day that DOCCS informed DOC that Plaintiff could be released. Of course, such actions cannot be considered deliberately indifferent or rise to the level of criminal recklessness.

Indeed, even "[i]f a period of prolonged detention results from discretionary decisions made in good faith, mistake, or **processing or other administrative delays**, as opposed to the

deliberate indifference of prison officials, then there is no Eighth Amendment liability." *Hurd*, 984 F.3d at 1086 (emphasis added).  And there was no "discretionary decision" here.

Accordingly, Plaintiff's Eighth Amendment claim should be dismissed.

## POINT III

## PLAINTIFF CANNOT STATE A PLAUSIBLE CLAIM UNDER THE FOURTH AMENDMENT

Plaintiff claims that Defendants are in violation of Plaintiff's Fourth Amendment rights. *See* Am. Compl. at ¶¶ 113-124.  However, a plaintiff's allegation that his constitutional rights were violated because his incarceration exceeded his maximum sentence does not fall under the purview of the Fourth Amendment.  *See, e.g., Francis v. Fiacco*, No. 15-CV-901, 2018 U.S. Dist. LEXIS 43264, at *16 (N.D.N.Y. Mar. 16, 2018), *rev'd and remanded on other grounds*, 942 F.3d 126 (2d Cir. 2019) ("Plaintiff asserts injuries arising from his unlawfully prolonged detention following his lawful convictions.  Having been convicted, Plaintiff's claims regarding unlawfully extending the term of his incarceration must necessarily arise from either the Eighth Amendment's prohibition of cruel and unusual punishment or the Fourteenth Amendment Due Process Clause.") (collecting cases); *see also, e.g., Stein v. Pruyne*, No. 15-CV-7039 (CS), 2020 U.S. Dist. LEXIS 115419, at *28 (S.D.N.Y. June 29, 2020).  Even Plaintiff acknowledges that this claim's "ultimate viability is not certain."  Dkt. No. 40.

Accordingly, Plaintiff's Fourth Amendment claim should be dismissed.

**POINT IV**

**PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED**

**A.  Plaintiff's Substantive Due Process Claim Should Be Dismissed**

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "The first step in substantive due process analysis is to identify the constitutional right at stake." *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995).  Next, the plaintiff "must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Southerland*, 680 F.3d at 151-52 (internal quotation marks and citation omitted).  A violation of an individual's substantive due process rights must arise from a governmental action that is "arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised." *Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006).

Here, Plaintiff fails to present any allegations and/or facts meeting this very high bar set by the Second Circuit.  As explained, Plaintiff's detention was mandated by the Criminal Court.  Thus, Plaintiff cannot establish that his detention was egregious, outrageous, arbitrary or conscience-shocking.  Even to the extent that Plaintiff faults DOC for the (at most) seven business days between the time of the Criminal Court Order directed DOC to take Plaintiff into custody and transfer him to DOCCS custody and the time that DOC made the necessary notification to DOCCS, Plaintiff's claim still fails because alleged administrative negligence is insufficient to support a Fourteenth Amendment violation of substantive due process.  *See, e.g., Garrett v. Cummmberbatch*,

14

No. 23-CV-2343 (LTS), 2023 U.S. Dist. LEXIS 88628, at *6 (S.D.N.Y. May 22, 2023) ("Here, Plaintiff fails to state a substantive due process claim.  Plaintiff's allegations suggest, at most, that Defendant was negligent when she failed to file Plaintiff's paperwork, and negligence does not amount to a constitutional violation under Section 1983.") (citing cases).

Accordingly, Plaintiff's substantive due process claim should be dismissed.

### B.  Plaintiff's Procedural Due Process Claim Should Be Dismissed

Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019) (citation omitted).

First, Plaintiff's procedural due process claim fails because he has no constitutional right to be, or liberty interest in being, released by a correctional facility in contravention of a Criminal Court Order that mandates that that facility take an individual into custody for the purposes of transferring that individual to another facility.  Moreover, as previously discussed, Plaintiff does not have a liberty interest when he is in DOC custody awaiting notification from DOCCS regarding whether plaintiff should be transferred or released, and Plaintiff does not have a constitutional right or liberty interest in DOC providing the required notice to DOCCS within any specific period of time.

Second, Plaintiff's procedural due process claim fails because he has not alleged that the procedures available to him were constitutionally insufficient.  In support of his claim, Plaintiff merely repeatedly alleges in conclusory fashion that Plaintiff had either no process or no

"meaningful" process to challenge his detention. *See* Am. Compl. at ¶¶ 1, 8, 66, 144, 145, 148, 152, 153. The only even remotely specific allegation in this regard is Plaintiff's claim he "was not afforded a hearing during his time in DOC custody after his sentencing to determine whether his continued incarceration was lawful." *Id.* at ¶ 149. However, Plaintiff fails to allege that he ever requested such a hearing and fails to explain why such a hearing would even be held or necessary. It is also unclear what a DOC hearing could even accomplish in light of the mandatory Criminal Court Order. As previously explained, the hearing where the issue of Plaintiff's immediate release should have been raised was the sentencing hearing before the Criminal Court where Plaintiff and his counsel apparently sat on their hands. Nothing stopped Plaintiff from requesting, at the time of his sentencing or at any time beforehand, that the Criminal Court order his immediate release based on his prior time served but Plaintiff does not allege that he did so.

Notably, Plaintiff's criminal defense attorney filed an affirmation with the Criminal Court on the date of Plaintiff's sentencing not to request his immediate release, but to ask that the Criminal Court direct DOCCS not to cut his hair upon his admission into its custody. *See* Affirmation, Sewell Decl., Exh. C. Both Plaintiff and his attorney acquiesced and understood that Plaintiff would need to be transferred from DOC to DOCCS custody. *See, e.g., id.* at ¶ 6 ("Upon assuming custody and control of James Seabrook, the New York State Department of Corrections and Community Supervision will compel him to cut his hair,..."). Plaintiff knew, and did not contest, that he was to be delivered to DOCCS by DOC per Criminal Court Order.

Further, Plaintiff fails to allege that he subsequently addressed the issue of his release with the Criminal Court during the 17-day period he alleges he was improperly detained. Instead, Plaintiff also does not allege that he reached out to DOC before his sentencing to expedite the

transfer process, when he clearly understood he would need to be transferred to DOCCS.  Plaintiff

and/or Plaintiff's attorney also did not reach out to DOC until nine (9) days after the sentencing

hearing.

In any event, Plaintiff also fails to allege that available procedures, such as filing a

grievance or calling 311, were insufficient.  *See* Contact DOC (available at

https://www.nyc.gov/site/doc/about/contact-doc.page).  Instead, as Plaintiff alleges, Plaintiff's

attorneys contacted DOC *after* sentencing and claimed that Plaintiff was being detained in excess

of his maximum sentence and should be released immediately, and Plaintiff's attorneys and DOC

engaged in correspondence until Plaintiff was released (after DOCCS informed DOC that Plaintiff

could be released).  *See* Am. Compl. at ¶¶ 81-86.  Plaintiff also fails to allege that such a process

was insufficient, particularly where under Plaintiff's (inaccurate) view, it worked.

Ultimately, the alleged 17-day excessive detention was not in violation of Plaintiff's

procedural due process rights because there were both sufficient administrative and court

procedures afforded to Plaintiff.

Accordingly, Plaintiff's procedural due process claim should be dismissed.


**POINT V**

**PLAINTIFF HAS FAILED TO ALLEGE SUFFICIENT FACTS TO ESTABLISH THAT THE INDIVIDUAL DEFENDANTS WERE PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATION**

"It is well settled in this Circuit that personal involvement of defendants in the alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Spavone v.*

*N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks

omitted).  Here, Plaintiff fails to allege sufficient facts to establish the personal involvement of any of the individual defendants and, therefore, they should all be dismissed as defendants.

The only substantive allegations Plaintiff specifically makes in the Amended Complaint with respect to defendants Maginley-Liddie, Molina, Schiraldi, Brann, and Brereton is that "[u]pon information and belief, [they] w[ere] personally involved in the formulation and execution of the City's official policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment."  Am. Compl. at ¶¶ 16, 17, 18, 19, 20.  That's it.  Plaintiff has literally alleged nothing else aside from this conclusory, copy and paste, boilerplate allegation against these defendants.  Significantly, Plaintiff has failed to allege that these individuals even knew who Plaintiff was, let alone anything about his conviction, sentencing and prior conviction history.  Plaintiff also fails to allege any facts concerning how these individuals were actually involved in Plaintiff's detention or efforts to transfer Plaintiff to DOCCS.  Of course, the reason for this is that Plaintiff cannot plausibly do so. Indeed, defendants Molina, Schiraldi and Brann were not even employed by DOC at the time of Plaintiff's sentencing on January 31, 2024, and there is no proper basis to allege that current DOC Commissioner Maginley-Liddie or DOC Deputy Commissioner of Security Operations Brereton had any actual personal involvement in Plaintiff's detention or transfer efforts.

Although Plaintiff does allege additional facts with respect to defendant Monastero, here, too, Plaintiff's allegations are insufficient.  In addition to again alleging in conclusory, copy and paste, boilerplate fashion that defendant Monastero, as the "current head of the Custody Management Unit. . . . involved in all day-to-day DOC custody management practices, decisions, and actions," "was personally involved in the formulation and execution of the City's official

18

policy and practice of continuing the detention of persons who already have spent more time in custody prior to their sentencings than their maximum terms of imprisonment," Plaintiff further alleges that defendant Monastero sent Plaintiff's counsel an e-mail explaining that DOC was waiting for DOCCS to authorize Plaintiff's release. *Id.* at ¶¶ 21, 85. However, sending an e-mail does not make someone a proper defendant. Here, again, Plaintiff fails to allege any facts concerning how defendant Monastero was actually involved in Plaintiff's detention or efforts to transfer Plaintiff to DOCCS. At best, Plaintiff has alleged that defendant Monastero was a supervisor of someone who may have been so involved, but that is not enough.

Indeed, it is well-settled that a plaintiff cannot sue someone "for damages solely because of their supervisory position." *Abernathy v. Comm'r of Corr.*, No. 3:20-cv-00628 (VAB), 2021 U.S. Dist. LEXIS 64738, at *10 (D. Conn. Apr. 2, 2021). Rather, "[b]ecause under *Iqbal*, 'a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution,' the Second Circuit [has] held that 'for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.'" *Id.* at *12 (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (internal citation omitted). "[A] plaintiff also must establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). Thus, "[a] general allegation that a defendant failed to supervise subordinates is insufficient to establish personal involvement without a factual connection between the supervisory defendant's alleged failure and the alleged resulting harm to the plaintiff." *Abernathy*, 2020 U.S. Dist. LEXIS 156611, at *10.

Quite simply, Plaintiff cannot hold these defendants "personally liable for a[n alleged] constitutional violation by their staff based on their high position of authority in the prison system." *Id.* at *14. Accordingly, all of the individual defendants should be dismissed as defendants.

## POINT VI

## THE CITY OF NEW YORK SHOULD BE DISMISSED AS A DEFENDANT

As an initial matter, defendant City of New York should be dismissed as a defendant because Plaintiff fails to specifically assert a municipal liability claim, or any other proper claim, against it. Moreover, even if Plaintiff had properly asserted a municipal liability claim against the City of New York, it would fail because, as discussed above, Plaintiff has failed to allege an underlying constitutional violation, nor is he able to do so. *See, e.g., Dorsett v. County of Nassau*, No. 11-CV-5748 (SJF)(GRB), 2013 U.S. Dist. LEXIS 9823, at *16 (E.D.N.Y. Jan. 24, 2013) ("In light of the absence of an underlying constitutional violation, plaintiffs cannot sustain a claim for municipal liability.").

A theoretical municipal liability claim against the City of New York also fails because Plaintiff cannot plausibly allege that any unconstitutional City practice or policy caused, or was the moving force behind, his purported unlawful detention because his detention was mandated by the Criminal Court Order. *See, e.g., Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) ("[A] plaintiff [alleging municipal liability] must demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the alleged injury.").

Accordingly, defendant City of New York should be dismissed as a defendant.

## POINT VII

## <u>THE PURPORTED CLASS ACTION SHOULD BE DISMISSED</u>

"Class actions under Rule 23 of the Federal Rules of Civil Procedure are an exception to the general rule that one person cannot litigate injuries on behalf of another." *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)).

As a threshold matter, because Plaintiff's claims fail, Plaintiff's misguided attempt at class action certification must likewise fail. "[I]n general, if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994). As Plaintiff's claims should be dismissed, Plaintiff lacks standing to represent a class. *See, e.g., Sinclair v. Goord*, No. 9:07-CV-1317 (LEK/RFT), 2009 U.S. Dist. LEXIS 67901, at *23 (N.D.N.Y. Mar. 10, 2009) ("[A]s the Court is dismissing Plaintiff's claim for damages and injunctive relief, Plaintiff lacks standing to represent a class. Thus, Plaintiff's request to certify this case as a class action is also denied.") (citing cases).

Even if his claims were not dismissed, Plaintiff's proposed class includes "all persons who, at any time during the applicable limitations period, were detained by DOC . . . past the date on which they would be entitled to conditional release." Am. Compl. at ¶ 88. However, Plaintiff cannot properly represent such a class because he would not be a part of it. *See, e.g., Irvin v. Harris*, 944 F.3d 63, 71 (2d Cir. 2019) ("The named plaintiffs in a class action cannot represent a class of whom they are not a part.") (internal quotation marks and citation omitted).

Plaintiff further fails to meet all prongs of class action certification under FRCP 23(a). "[A] class may be certified only if…: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 42-43 (S.D.N.Y. 2012). There is also an implied requirement of ascertainability to the express requirements set forth in FRCP 23(a). *See In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 305 (S.D.N.Y. 2010) (citing *In re IPO Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006)). If the party attempting to bring a class action seeks monetary damages under FRCP 23(b)(3), the court must also find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that the class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see McLaughlin v. Tobacco Co.*, 522 F.3d 215, 221 (2d Cir. 2008) (internal quotations omitted).

First, Plaintiff fails to meet the numerosity requirement. In support of this requirement, Plaintiff alleges, in conclusory fashion, only that "[u]pon information and belief, the proposed class is so numerous that joinder of all members is impracticable" and speculates without any basis whatsoever that "[u]pon information and belief, the proposed class contains well more than 40 persons." Am. Compl. at ¶ 89. These allegations are insufficient and, notably, Plaintiff is the only named plaintiff in this action and no other putative class member has been identified in any way whatsoever. *See, e.g., Cheng Xia Wang v. Shun Lee Palace Rest., Inc.*, No. 17-Cv-840 (VSB), 2023 U.S. Dist. LEXIS 57138, at *12-13 (S.D.N.Y. Mar. 31, 2023) (holding that

conclusory statements alone are insufficient to make the showing that numerosity has been met); *see also, e.g., Stewart v. Hudson Hall LLC*, No. 20CIV885PGGSLC, 2021 U.S. Dist. LEXIS 230033, 2021 WL 6285227, at *11 (S.D.N.Y. Nov. 29, 2021) ("Here, there are no other named plaintiffs, and [plaintiff] offers no affidavits, deposition testimony, statistical data, or other concrete evidence on which to ground the inference that the Proposed Class exceeds 40 members."); *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 FB VVP, 2014 U.S. Dist. LEXIS 46007, 2014 WL 1338315, at *6 (E.D.N.Y. Apr. 2, 2014) (denying class certification motion and stating "[w]here the plaintiff's assertion of numerosity is based on pure speculation or bare allegations, the motion for class certification fails." (cleaned up)).

In this regard, Plaintiff also cannot satisfy the ascertainability requirement because, while he claims without any support that "[t]he putative class members are identifiable using records regularly maintained by DOC and DOCCS in the ordinary course of business," Am. Compl. at ¶ 93, Plaintiff proposes no methodology to identify the purported class. Thus, the identification of purported class members would require this Court to conduct extensive mini-trials and individualized fact finding.

Second, Plaintiff fails to meet the commonality requirement because the alleged class members' claims "must depend upon a common contention" asserting a cause of injury by the same defendant. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

In the instant action, the unique set of facts that underlie Plaintiff's allegations are quite unusual and specific only to Plaintiff. Plaintiff fails to name or show that any of the alleged class members suffer from similar or same injuries caused by the Defendants for the same reason under an identifiable, common policy or rule practiced and promulgated by the Defendants. Even if Plaintiff claims that the alleged class members suffered injury by exceeding their maximum sentence, this likely would have occurred for different reasons by different means and by different agencies on a case-by-case, facts-specific basis more appropriate for separate plenary action.

Indeed, while Plaintiff claims that the "cause of Plaintiff's injuries was the same as the cause of the injuries suffered by all putative class members," Am. Compl. at ¶ 98, this cannot be true as his alleged unconstitutional detention was caused by the Criminal Court.

Moreover, class certification is precluded because each purported class member would have their own unique claim for individualized monetary damages, presumably based primarily on the length of the allegedly wrongful detention. *Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26, 29 (2d Cir. 2012) ("[I]f plaintiffs are ultimately successful in establishing . . . liability. . . the district court would then need to determine the separate monetary recoveries to which individual plaintiffs are entitled. . . .  This process would require the type of non-incidental, individualized proceedings for monetary awards that [the Supreme Court] rejected under Rule 23(b)(2)").

Third, Plaintiff cannot establish superiority. With respect to this requirement, Plaintiff merely alleges in conclusory fashion that "[m]aintaining this action as a class action is superior to other available methods because individual actions are not likely to be feasible." Am. Compl. at ¶ 98. But Plaintiff fails to elaborate or explain why that is. Plaintiff's claim in this regard also

defies logic.  Indeed, individual cases alleging unconstitutional deprivations of liberty pursuant to Section 1983 are the norm.  Plaintiff fails to demonstrate that converting this case into a class action suit is superior and that failing to do so would result in injustice to other, unidentified, individual, potential claimants.

Accordingly, the purported class action should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice, together with such costs, fees, and any other further relief as this Court deems just and proper.

Dated: Brooklyn, New York
October 18, 2024

**LAW FIRM OF DAYREL SEWELL, PLLC**
*Attorneys for Defendants*
599 E. 2nd Street
Brooklyn, New York 11218
Tel.: (347) 787-6824
E-mail: info@sewellnylaw.com

By: _____/s/_____
Dayrel S. Sewell, Esq., MPH
Min Jung Kim, Esq.

cc:    **VIA ECF**
All Attorneys of Record

25