UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

JAMES SEABROOK, on his own behalf and on
behalf of others similarly situated,

        Plaintiff,

          -against-

CITY OF NEW YORK; LYNELLE
MAGINLEY-LIDDIE; LOUIS MOLINA;
VINCENT SCHIRALDI; CYNTHIA BRANN;
RONALD BRERERTON; and ANTHONY
MONASTERO,

        Defendants.
_____x

No. 24 Civ. 2029 (PKC)

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

WANG HECKER LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 3

STANDARD OF REVIEW ....................................................................................................... 5

ARGUMENT ............................................................................................................................. 5

I.    The Documents Defendants Have Submitted Do Not Entitle Them to Dismissal at the
      Pleading Stage ................................................................................................................. 5

      A.    The Criminal Court Order ...................................................................................... 5

      B.    The DOCCS Letter of No Interest ......................................................................... 7

      C.    Criminal Defense Counsel's Affirmation .............................................................. 8

II.   Each of Plaintiff's Claims Is Adequately Pled ............................................................... 9

      A.    Plaintiff's Eighth Amendment Claim Is Adequately Pled ..................................... 9

      B.    Plaintiff's Substantive Due Process Claim Is Adequately Pled ........................... 13

      C.    Plaintiff's Procedural Due Process Claim Is Adequately Pled ............................. 15

      D.    Plaintiff's Fourth Amendment Claim Is Adequately Pled .................................... 19

III.  Plaintiff Has Adequately Pled Municipal Liability ....................................................... 20

IV.   The Individual Defendants Are Not Entitled to Dismissal at the Pleading Stage ........... 21

      A.    Personal Involvement ........................................................................................... 21

      B.    Qualified Immunity .............................................................................................. 23

V.    Plaintiff's Class Allegations Are Adequately Pled ........................................................ 23

CONCLUSION ........................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Allaire Corp. v. Okumus*,
  433 F.3d 248 (2d Cir. 2006).................................................................................... 5

*Askins v. Doe No. 1*,
  727 F.3d 248 (2d Cir. 2013).................................................................................. 21

*Barrett v. Orange Cnty. Hum. Rts. Comm'n*,
  194 F.3d 341 (2d Cir. 1999).................................................................................. 21

*Belfiore v. Procter & Gamble Co.*,
  94 F. Supp. 3d 440 (E.D.N.Y. 2015) ................................................................... 24

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................... 5

*Bridge Fin. Pty Ltd v. RPE I Inv. I, LLC*,
  No. 23 Civ. 11230, 2024 WL 1806414 (S.D.N.Y. Apr. 25, 2024)........................... 7

*Brown v. Coughlin*,
  704 F. Supp. 41 (S.D.N.Y. 1989) ................................................................... 10, 23

*Calhoun v. N.Y. State Div. of Parole Officers*,
  999 F.2d 647 (2d Cir. 1993)........................................................................... 11, 15

*Carter v. Broome Cnty.*,
  394 F. Supp. 3d 228 (N.D.N.Y. 2019)................................................................. 22

*Case v. City of New York*,
  233 F. Supp. 3d 372 (S.D.N.Y. 2017) ................................................................. 23

*Dudek v. Nassau Cnty. Sheriff's Dep't*,
  991 F. Supp. 2d 402 (E.D.N.Y. 2013) .............................................................. 6, 21

*Foucha v. Louisiana*,
  504 U.S. 71 (1992)............................................................................................... 13

*Francis v. Fiacco*,
  942 F.3d 126 (2d Cir. 2019)......................................................................... *passim*

*Garrett v. Cummberbatch*,
  No. 23 Civ. 2343, 2023 WL 3582631 (S.D.N.Y. May 22, 2023)........................... 14

*Greenaway v. Cnty. of Nassau*,
  97 F. Supp. 3d 225 (E.D.N.Y. 2015) ................................................................ 19

*Greene v. City of New York*,
  No. 21 Civ. 5762, 2024 WL 1308434 (S.D.N.Y. Mar. 26, 2024) ........................... 24

*Hidalgo v. Johnson & Johnson Consumer Comps., Inc.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015) ............................................................... 25

*Hines v. Albany Police Dep't*,
  520 Fed. App'x 5 (2d Cir. 2013)...................................................................... 20

*Hurd v. Fredenburgh*,
  984 F.3d 1075 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021) ........................... *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*,
  999 F.3d 842 (2d Cir. 2021)........................................................................... 22

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013) ............................................................... 24

*Ky. Dep't of Corr. v. Thompson*,
  490 U.S. 454 (1989)...................................................................................... 15

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)...................................................................................... 17

*Matzell v. Annucci*,
  64 F.4th 425 (2d Cir. 2023) ...................................................................... 15, 23

*Mayfield v. Asta Funding Inc.*,
  95 F. Supp. 3d 685 (S.D.N.Y. 2015) ................................................................ 24

*Mejia v. City of New York*,
  119 F. Supp. 2d 232 (E.D.N.Y. 2000) .............................................................. 19

*Monell v. Dep't of Soc. Servs. of the City of New York*,
  436 U.S. 658 (1978)...................................................................................... 20

*Morrissey v. Brewer*,
  408 U.S. 471 (1972)...................................................................................... 17

*Murphy v. Hughson*,
  82 F.4th 177 (2d Cir. 2023) ........................................................................... 14

*Myers on behalf of Est. of Myers v. Davenport,*
  No. 21 Civ. 0922, 2022 WL 3017367 (N.D.N.Y. July 29, 2022)............................................ 22

*Owen v. City of Independence,*
  445 U.S. 622 (1980)................................................................................................................ 20

*Parham v. J.R.,*
  442 U.S. 584 (1979)................................................................................................................ 13

*Patane v. Clark,*
  508 F.3d 106 (2d Cir. 2007)...................................................................................................... 5

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986)................................................................................................................ 21

*Petrosino v. Stearn's Prod., Inc.,*
  No. 16 Civ. 1614349, 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018) ..................................... 24

*Reynolds v. Lifewatch, Inc.,*
  136 F. Supp. 3d 503 (S.D.N.Y. 2015) ..................................................................................... 24

*Rodriguez v. City of New York,*
  590 F. Supp. 3d 518 (E.D.N.Y. 2022) ..................................................................................... 14

*Rodriguez v. City of New York,*
  623 F. Supp. 3d 225 (S.D.N.Y. 2022) ..................................................................................... 13

*Rojas v. Triborough Bridge & Tunnel Auth.,*
  No. 18 Civ. 1433, 2020 WL 1910471 (S.D.N.Y. Apr. 17, 2020)............................................ 24

*Sandin v. Conner,*
  515 U.S. 472 (1995)................................................................................................................ 11

*Schoolcraft v. City of New York,*
  103 F. Supp. 3d 465 (S.D.N.Y.), *on reconsideration in part,*
  133 F. Supp. 3d 563 (S.D.N.Y. 2015) ..................................................................................... 21

*Singer v. Fulton Cnty. Sheriff,*
  63 F.3d 110 (2d Cir. 1995)....................................................................................................... 19

*Skinner v. Switzer,*
  562 U.S. 521 (2011)................................................................................................................... 5

*Stone #1 v. Annucci,*
  No. 20 Civ. 1326, 2021 WL 4463033 (S.D.N.Y. Sept. 28, 2011)........................................... 22

iv

*Vives v. City of New York*,
   524 F.3d 346 (2d Cir. 2008)..........................................................................................20

*Wallace v. Conroy*,
   945 F. Supp. 628 (S.D.N.Y. 1996) ...............................................................................11

*Wyant v. Okst*,
   101 F.3d 845 (2d Cir. 1996)..........................................................................................19

**Rules**

Fed. R. Civ. Proc. 23(d)(1)(D)............................................................................................23

## PRELIMINARY STATEMENT

It is undisputed that Plaintiff was detained by the New York City Department of Correction ("DOC") for seventeen days after he was sentenced to a maximum term of seven years in custody. It further is undisputed that at the time of his sentencing, Plaintiff already had served more than seven years. Because Plaintiff has adequately pled his claims arising from this undisputed over-detention, Defendants' motion to dismiss should be denied.

Although a Rule 12(b)(6) motion to dismiss tests the sufficiency of a pleading, Defendants attempt to escape liability by relying on three documents that are not referred to in the Amended Complaint but that they nevertheless have submitted with their motion. None of those documents rescues them.

The criminal court sentencing order did not "require" Defendants to violate the Constitution because it stated expressly that Plaintiff was to be "released in accordance with the law" and because Defendants never actually delivered Plaintiff to the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") as they so vociferously claim the order "required" them to do.

The letter of no further interest that DOCCS sent to DOC is dated a month before Plaintiff's release, and there is no evidence in the record – because no discovery has been taken – regarding when DOC first sent its sentencing calculation information to DOCCS and what if anything DOC did to try to expedite Plaintiff's release given its knowledge that he was being over-detained.

And the affirmation that Plaintiff's criminal defense lawyer submitted to the sentencing court, which was about an unwanted haircut, stated that Plaintiff had served the entirety of his sentence and plainly did not concede that Plaintiff's over-detention was constitutional.

Defendants' attacks on Plaintiff's four causes of action fare no better, and it is clear that each claim is well pled. Indeed, with respect to two of Plaintiff's claims – the Eighth Amendment and procedural due process claims – Defendants' arguments are frivolous in light of controlling Second Circuit precedent that they ignore.

Nor is there any doubt that Plaintiff has adequately pled both municipal and individual liability. The Amended Complaint clearly alleges that the City of New York (the "City") maintains an official policy and practice of continuing the detention of individuals who already have spent more time in custody prior to sentencing than the person's maximum term of imprisonment, that Defendants knew that this official policy and practice risked violating Plaintiff's constitutional rights, and that this official policy and practice caused Plaintiff's unlawful over-detention. Plaintiff has sued the City itself, the policymakers who are responsible for creating and continuing to implement the policy, and an official who personally was directly involved in Plaintiff's over-detention. Qualified immunity is never available to the City, and the individual Defendants are not entitled to qualified immunity – at all, and certainly not at this pre-discovery juncture – because the constitutional rights they trampled on were clearly established when they over-detained Plaintiff.

Finally, Defendants' blunderbuss attack on the class allegations violates procedural rules and is at best premature. We look forward to debating with Defendants in due course whether the proposed class should be certified, after Plaintiff has had the opportunity to take class discovery.

For those reasons and the reasons that follow, Defendants' motion should be denied in its entirety.

## BACKGROUND

Plaintiff James Seabrook was arrested in 2016 on several charges.  ECF No. 19, Amended Complaint ("Compl.") ¶¶ 67-68.  In April 2019, he was convicted of Criminal Possession of a Weapon in the Third Degree, but the jury hung on the other counts.  *Id.* ¶ 69. Plaintiff was re-tried on the hung charges in 2022, and the jury hung again.  *Id*. ¶ 70.  On December 13, 2023, Plaintiff was acquitted on all of the outstanding charges following his third trial.  *Id.* ¶ 71.  Plaintiff was released from DOC custody immediately following his acquittal. *Id.* ¶ 72.  At the time he was released, Plaintiff had served more than seven and a half years in DOC custody.  *Id*. ¶ 73.

After six weeks of freedom, Plaintiff returned to court on January 31, 2024, where he was sentenced to three and a half to seven years for his 2019 conviction.  *Id*. ¶ 74.  At the time of his sentencing, Plaintiff already had spent more time in DOC custody than his maximum sentence. *Id*. ¶¶ 74-75.

Section 70.30 of the Penal Law (which is entitled "Calculation of terms of imprisonment") addresses how to calculate a term of imprisonment.  *Id*. ¶ 32.  Subsection 70.30(1) first provides that generally, a term of imprisonment "commences when the prisoner is received in an institution under the jurisdiction of" DOCCS.  *Id*. ¶ 33.  But where a defendant has already spent time in jail prior to the commencement of the sentence as a result of the charge that culminated in the sentence, subsection 70.30(3) provides that the sentence term "shall be credited with and diminished by the amount of time the person spent in custody prior to the commencement of such sentence as a result of the charge that culminated in the sentence."  *Id.* ¶ 37.  Accordingly, where a person is sentenced to a maximum term of imprisonment that is less

than the amount of time he or she already has spent in custody, the person is entitled to immediate release.  *Id*. ¶ 38.

Consistent with and reflecting the obvious importance of performing this calculation promptly and accurately, Correction Law § 600-a requires DOC to maintain accurate records of pre-sentencing incarceration time.  *Id.* ¶ 39.

Defendants detained Plaintiff for seventeen days following his sentencing notwithstanding that he had already served more time than his maximum sentence.  *Id*. ¶¶ 75-77.  Plaintiff had served virtually all of his pre-sentencing time in DOC custody, and DOC officials were therefore aware that they were holding him past his maximum release date.  *See id*. ¶ 73.

Throughout Plaintiff's seventeen-day over-detention, he and his criminal attorneys made numerous efforts to notify DOC of Plaintiff's unconstitutional detention, including but not limited to writing to multiple DOC officials.  *Id*. ¶¶ 80-81, 83.  DOC officials responded by saying, *inter alia*, that they were working on "expedit[ing]" Plaintiff's release, but that they could "neither release [Plaintiff] nor transfer [Plaintiff] to State DOCCS custody without their authorization."  *Id*. ¶¶ 84-85.

The cause of Plaintiff's unlawful detention was the City's official policy and practice of continuing the detention of individuals who already have spent more time in custody prior to sentencing, as a result of charges that culminated in the sentence, than the person's maximum term of imprisonment.  *Id.* ¶ 45.  The City's official policy and practice is to continue the detention of such persons until they are transferred to DOCCS custody.  *Id*. ¶ 46.

That policy and practice plainly violates the United States Constitution, and it is not compelled by state law.  Nothing in Penal Law § 70.30 says that only DOCCS may calculate a person's term of imprisonment.  *Id.* ¶ 53.  And nothing in Penal Law § 70.30 says that a person's

term of imprisonment cannot be calculated until he or she physically arrives at a DOCCS facility. *Id*. ¶ 54.  Indeed, it is undisputed that Plaintiff was released without ever stepping foot into a DOCCS facility.  *Id*. ¶¶ 77, 86.

## STANDARD OF REVIEW

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) "assess[] the legal sufficiency of a claim."  *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007).  When deciding a Rule 12(b)(6) motion, a court must accept the factual allegations contained in the complaint as true and draw all inferences in favor of the plaintiff.  *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint will survive a 12(b)(6) motion if it is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The question is not whether the opposing party will ultimately prevail, "but whether [the] complaint [is] sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).  The Court should deny Defendants' motion if Plaintiff has alleged "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that substantiates his allegations.  *Twombly*, 550 U.S. at 556.

## ARGUMENT

### I.    The Documents Defendants Have Submitted Do Not Entitle Them to Dismissal at the Pleading Stage

We demonstrate in Point II below that Plaintiff has adequately pled each of his claims. Before doing so, we address the three documents that Defendants have submitted to the Court with their motion to dismiss.  For the reasons that follow, none of those documents entitles Defendants to dismissal of the Amended Complaint at the pleading stage.

#### A.    The Criminal Court Order

Defendants rely heavily on the sentence and commitment order in Plaintiff's criminal case, Sewell Decl. Ex. A (the "Criminal Court Order"), which Defendants claim required them

"to detain Plaintiff and deliver him to the custody of DOCCS."  ECF No. 48 ("Defs. Mem.")
at 1.  Defendants insist that they were barred from releasing Plaintiff without delivering him to
DOCCS because doing so would have "directly violate[d]" the Criminal Court Order.  *Id.*; *see
also id.* at 7-9, 12.  Defendants are wrong for several reasons.

First, the Criminal Court Order states that Plaintiff was to be committed only until such
time as he became entitled to be "released in accordance with the law."  Sewell Decl. Ex. A.  The
whole point of this case is that Plaintiff became legally entitled to be released as soon as he was
sentenced to less time than he already had served.  Releasing him promptly after he had served
the entirety of his sentence would have been "in accordance with the law" and therefore would
not have violated the Criminal Court Order.  Defendants pretend that the Criminal Court Order
directed them to detain Plaintiff past his maximum release date, but it did no such thing.

Second, at most, the boilerplate in the Criminal Court Order referring to non-party DOC
"directed" it to transfer Plaintiff to DOCCS "as provided in 7 NYCRR Part 103," which are the
state regulations governing which DOCCS facility is to serve as the initial receiving facility for
different categories of prisoners.  There was no valid basis for DOC to read that passing
boilerplate to require it to continue to detain Plaintiff indefinitely past his maximum release date
in violation of clearly established federal constitutional law.  *See Dudek v. Nassau Cnty. Sheriff's
Dep't*, 991 F. Supp. 2d 402, 411-12 (E.D.N.Y. 2013) (holding municipality liable where the
judicial order at issue did not require it to violate the Constitution).

Third, contrary to Defendants' claim that the Criminal Court Order supposedly
"required" them to deliver Plaintiff to DOCCS in derogation of his constitutional right to
immediate release, Defendants never actually delivered Plaintiff to any DOCCS facility.  Instead,
Defendants released Plaintiff from Rikers Island.  Compl. ¶¶ 77, 86.  Given that Defendants

"violated" the Criminal Court Order according to their interpretation of it, they cannot credibly claim that complying with it required them to hold Plaintiff in excess of his maximum sentence.

### B.    The DOCCS Letter of No Interest

Defendants also rely on the DOCCS letter of no interest dated January 16, 2024, Sewell Decl. Ex. B (the "Letter of No Interest").  Defendants' reliance on that document is misplaced for several reasons.

First, that email communication is not referenced in the Amended Complaint, and Defendants' attempt to insert it into the record at this early stage "is nothing more than a thinly veiled attempt to impermissibly amend the complaint through motion to dismiss briefing." *Bridge Fin. Pty Ltd v. RPE I Inv. I, LLC*, No. 23 Civ. 11230, 2024 WL 1806414, at *2 (S.D.N.Y. Apr. 25, 2024) (refusing to take judicial note of email communications appended as an exhibit to motion to dismiss papers).  The Court should not consider it at this time.

Second, even if the Court were to consider this document, it hardly helps Defendants' cause that DOCCS apparently generated the Letter of No Interest on January 16, 2024, a month *before* Plaintiff was released.  Defendants claim in their brief that the Letter of No Interest actually was written a month later than it is dated, Defs. Mem. at 4 n.1, but Defendants have offered no evidence supporting that claim beyond the speculative assertion in their brief that the date the letter was conveyed by email must be the same date the letter was written.  Nor could Defendants submit further evidence on this point at this juncture without running afoul of the bedrock rule that in adjudicating a motion to dismiss, the Court may not look beyond the allegations in the pleading.

Third, even assuming the Letter of No Interest was mis-dated, the record contains no evidence shedding light on what if anything Defendants did to try to effectuate Plaintiff's release

during the seventeen-day period in which they knew that he was being unlawfully over-detained. Defendants have submitted a response email *from* DOCCS, but they have not disclosed any of their communications *to* DOCCS.  Plaintiff is entitled to discover, among other things, when Defendants informed DOCCS that Plaintiff was sentenced to less time than he already had served; the extent to which Defendants followed up with DOCCS, if at all; and why it was good enough for Defendants that DOCCS told them to release Plaintiff even though Defendants had not delivered Plaintiff to DOCCS as they claim the Criminal Court Order and state law supposedly "required."

### C.    Criminal Defense Counsel's Affirmation

Defendants also rely on an affirmation that Plaintiff's criminal defense lawyer presented to the sentencing court in an effort to prevent DOCCS from cutting Plaintiff's hair.  Sewell Decl. Ex. C.  The reason why Plaintiff's criminal defense lawyer made this motion was that he was aware of Defendants' policy and practice of refusing to release inmates who had exceeded their maximum sentences until they first physically stepped into a DOCCS facility.  By submitting the affirmation, Plaintiff's criminal defense lawyer was in no way blessing Defendants' unconstitutional policy and practice, much less was he waiving Plaintiff's right to assert claims under 42 U.S.C. § 1983.  To the contrary, Plaintiff's criminal defense lawyer stated unequivocally in his affirmation that "James Seabrook has served his entire sentence . . . and should be immediately released."  Sewell Decl. Ex. C ¶ 4.

Plaintiff's criminal defense lawyer was simply trying to protect his client from receiving an unwanted forced haircut.  Far from entitling Defendants to judgment as a matter of law at the pleading stage, if anything, this affirmation bolsters the inference that the unconstitutional policy and practice at issue in this case was widespread, well known, and affected many people.

## II.    Each of Plaintiff's Claims Is Adequately Pled

### A.    Plaintiff's Eighth Amendment Claim Is Adequately Pled

The Second Circuit has squarely held that the detention of a person for even one day beyond the end of his or her maximum sentence implicates the Eighth Amendment. *See Hurd v. Fredenburgh*, 984 F.3d 1075, 1085 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021); *see also Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 252 (S.D.N.Y. 2022). "A plaintiff asserting an Eighth Amendment [excessive detention] claim pursuant to 42 U.S.C. § 1983 must meet two requirements. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the charged official must act with a sufficiently culpable state of mind." *Hurd*, 984 F.3d at 1084 (quoting *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019)). The Amended Complaint satisfies each requirement.

With respect to the first requirement, the Amended Complaint alleges that DOC detained Plaintiff for seventeen days following his maximum term of imprisonment. Compl. ¶¶ 76-77. There is no doubt that this allegation satisfies the first requirement because the clear holding in *Hurd* was that "unauthorized detention of just one day past an inmate's mandatory release date qualifies as a harm of constitutional magnitude under the first prong of the Eighth Amendment analysis." *Hurd*, 984 F. 3d at 1085.

With respect to the second requirement, the Amended Complaint alleges that Defendants were aware of Plaintiff's excessive detention and were deliberately indifferent to the violation of his rights, Compl. ¶¶ 110, 121, 136; that during the entire period of Plaintiff's excessive detention, "DOC knew that [Plaintiff] was being detained unconstitutionally in excess of his maximum sentence," *id.* ¶ 79; that "[Plaintiff] and his criminal defense lawyers notified numerous DOC officials of his unconstitutional detention," *id.* ¶ 80, including in the affirmation

Defendants appended to their papers, Sewell Decl. Ex. C; that "DOC … is the agency that possesses the information regarding the amount of time a person has spent in custody prior to the commencement of his or her sentence," *id.* ¶ 58; and that the City has adopted "an official policy and practice of continuing the detention of persons who already have spent more time in custody prior to sentencing . . . than the person's maximum term of imprisonment," *id.* ¶ 45.  These allegations are more than sufficient to state a claim for deliberate indifference.  *See*, *e.g.*, *Brown v. Coughlin*, 704 F. Supp. 41, 44-45 (S.D.N.Y. 1989) (holding that plaintiff sufficiently alleged knowledge of a constitutional violation by virtue of a "written protest telling [the defendant] that [plaintiff's release] date was wrong").

Defendants attack Plaintiff's Eighth Amendment claim with several arguments, none of which has merit.

Defendants assert that DOC supposedly "made the required notification to DOCCS within at least seven (7) business days of taking Plaintiff into custody."  Defs. Mem. at 1; *id.* at 7-8, 9, 11, 14.  That unsupported assertion in their brief should not be considered on this motion. The Amended Complaint says nothing about when DOC made any notification to DOCCS, and Defendants have presented no evidence that they made any notification at any time, let alone within seven business days after Plaintiff was sentenced.  (Defendants cannot submit any such purported evidence with their reply because doing so would be improper on a motion to dismiss and would unfairly deprive Plaintiff of an opportunity to respond.)

In any event, Defendants still have not grappled with the holding in *Hurd* that even one day of excessive detention – let alone seven or more – is sufficient to satisfy the first requirement of the Eighth Amendment analysis.  In their pre-motion letter, defense counsel failed even to cite *Hurd*, relying instead on *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d

Cir. 1993), the case that *Hurd* expressly disavowed, *see* 984 F.3d at 1085 n.4.  In Plaintiff's pre-motion opposition letter, we called out defense counsel for failing to cite *Hurd*, and yet in Defendants' brief, they continue to ignore *Hurd*'s clearly established holding that even a single day of excessive detention satisfies the first Eighth Amendment requirement.

Defendants rely instead on *Wallace v. Conroy*, 945 F. Supp. 628 (S.D.N.Y. 1996), a district court decision that pre-dated *Hurd* by more than twenty years and has nothing to do with this case.  *Wallace* was not an over-detention case.  Rather, the plaintiff in *Wallace* was facing a long sentence and merely claimed that was entitled to be transferred from DOC to DOCCS sooner than he was so that he could serve his time in a DOCCS facility.  The Court rejected that claim because the 20-day delay in transferring the plaintiff from one facility to another "had no meaningful effect on the duration of his sentence" and did not "subject him to a longer prison sentence than that imposed by the sentencing court."  *Id*. at 636.  This point was so essential to the Court's holding that it cited *Sandin v. Conner*, 515 U.S. 472 (1995), and five other cases confirming the importance of the fact that the delay at issue would not lead to extra time in custody.  Defendants cite no case in which a substantial over-detention past the expiration of a maximum sentence has been upheld, much less since *Hurd* was decided.

With respect to the second Eighth Amendment requirement, Defendants assert that they could not have been deliberately indifferent because they allegedly released Plaintiff "[o]n the very same day that DOCCS informed DOC that Plaintiff could be released."  Defs. Mem. at 12.  Even assuming that unsupported assertion is true, it is not a valid defense.  The Amended Complaint alleges both that DOC knew as of Plaintiff's sentencing date that he already had served more time than his maximum sentence and that Plaintiff and his criminal defense attorney complained to DOC about Plaintiff's unlawful over-detention well before his belated release.

Compl. ¶¶ 79-86.  There is no basis for Defendants' suggestion that notwithstanding *Hurd*, and notwithstanding their knowledge that they were over-detaining Plaintiff, they somehow were legally required to continue to imprison Plaintiff until DOCCS eventually signed off on his release.  No state statute says that DOC must continue to over-detain a person past the known expiration of his maximum sentence until DOCCS signs off on his release.  To the contrary, the only state statute that speaks to DOC's obligations in that regard is Criminal Procedure Law § 430.30, which requires DOC to "deliver the defendant forthwith" to DOCCS.  DOC failed to do that.

Defendants therefore resort to what they acknowledge is at best a "technical[ity]":  the argument that Plaintiff's sentence "technically" did not commence until he physically set foot in a DOCCS facility.  Defs. Mem. at 9.  But the statute they cite, Penal Law § 70.30, says no such thing.  To be sure, subsection 70.30(1) refers to when a sentence commences, but subsection 70.30(3) provides that a term of incarceration is "diminished" by time served in local custody, such that if a person already is past his maximum sentence, the sentence is diminished to zero.  Section 70.30 addresses *how* to calculate a term of imprisonment, but it says nothing about *who* must perform the calculation, *when* that calculation must be done, or *where* a person must be when the calculation is done.  *See* Compl. ¶¶ 48-51.  Defendants' reading of § 70.30 would compel the absurd conclusion that DOC can continue to over-detain maxed-out prisoners forever on the ground that they "technically" have not begun to serve their sentences.  And to repeat, in this case, Defendants never delivered Plaintiff to DOCCS, Compl. ¶ 86, demonstrating that they never actually believed that § 70.30 or any other statute "required" Plaintiff to physically enter a DOCCS facility before his maxed-out sentence could "begin."

Finally, there is no merit to Defendants' passing suggestion that Plaintiff's over-detention resulted from lawful "processing or other administrative delays." Defs. Mem. at 12-13. *Hurd* observed that in some cases, unavoidable processing or other administrative delays may negate the existence of deliberate indifference. *See* 984 F.3d at 1086. But it is a giant leap from that premise to the untenable argument that, simply by writing the words "processing or other administrative delays" in their brief, Defendants somehow are entitled to dismissal of the Amended Complaint as a matter of law at the pleading stage. *See Rodriguez v. City of New York*, 623 F. Supp. 3d 225, 253 (S.D.N.Y. 2022) (denying motion to dismiss Eighth Amendment claim where plaintiff alleged that defendants "were deliberately indifferent to his over-detention because they knew the writ [granting his immediate release] had been granted but did nothing to effectuate plaintiff's release"). Here, Plaintiff alleges that he was detained beyond his maximum sentence because of Defendants' inaction and reckless disregard of the law, not because of any unavoidable administrative delay.

### B.    Plaintiff's Substantive Due Process Claim Is Adequately Pled

Defendants contend that Plaintiff has not adequately alleged a violation of his substantive due process rights. They are wrong.

To state such a violation, Plaintiff must allege (1) that he suffered the deprivation of a cognizable liberty interest as a result of state action, and (2) that such state action "shock[s] the contemporary conscious." *Hurd*, 984 F.3d at 1087 (internal quotation marks and citations omitted). "The general liberty interest in freedom from detention is perhaps the most fundamental interest that the Due Process Clause protects." *Francis v. Fiacco*, 942 F.3d 126, 141-42 (2d Cir. 2019) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) and *Parham v. J.R.*, 442 U.S. 584, 600 (1979)). *Hurd* squarely held that the detention of any person who already has

served his entire sentence implicates substantive due process. 984 F.3d at 1088 ("Because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action . . . commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *id*. ("Substantive due process protects rights that are rooted in the principles of ordered liberty. Freedom from unlawful restraint is exactly that."). Plaintiff has adequately alleged that his seventeen-day unlawful detention shocks the conscience. *See Murphy v. Hughson*, 82 F.4th 177, 189 (2d Cir. 2023) (denying summary judgment where jury could find that a two-hour delay in release after bail was conscience-shocking); *Rodriguez v. City of New York*, 590 F. Supp. 3d 518, 547 (E.D.N.Y. 2022) (observing that requirement to plead that government conduct shocks the conscience is a "standard easily satisfied at the motion to dismiss stage") (internal quotation marks and citation omitted).

Other than relying on their baseless assertions that their hands supposedly were tied by the Criminal Court Order and that seventeen days of over-detention supposedly does not implicate the Constitution, Defendants' only basis for arguing that Plaintiff's substantive due process claim should be dismissed is their assertion that their actions and inactions supposedly amounted to, at most, "administrative negligence." Defs. Mem. at 14-15. But the only case they cite, *Garrett v. Cummberbatch*, No. 23 Civ. 2343, 2023 WL 3582631 (S.D.N.Y. May 22, 2023), is inapposite (*Garrett* involved a pro se prisoner who complained that she was not allowed to attend a relative's funeral). We recognize that mere negligence is not enough to sustain a substantive due process claim, but in this case, Plaintiff has alleged that Defendants knew that he was being over-detained throughout his lengthy over-detention, had no legal justification for continuing to detain him, ignored complaints from Plaintiff and his criminal defense lawyer,

14

failed to deliver him to DOCCS, and failed to take basic steps to expedite his release. Those allegations go well beyond ordinary negligence allegations and plainly are sufficient to withstand this motion to dismiss.

**C.    Plaintiff's Procedural Due Process Claim Is Adequately Pled**

"Federal courts 'examine procedural due process questions in two steps:  the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"  *Francis v. Fiacco*, 942 F.3d 126, 141 (2d Cir. 2019) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Defendants argue that Plaintiff has alleged no cognizable liberty interest sufficient to trigger procedural due process protections.  Defs. Mem. at 15.  That contention is frivolous. Decades of Second Circuit precedent make clear that "an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment."  *Francis*, 942 F.3d at 142 (quoting *Calhoun v. New York State Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1992)); *see also Matzell v. Annucci*, 64 F.4th 425, 437 (2d Cir. 2023) ("The general liberty interest in freedom from detention is perhaps the most fundamental interest that the Due Process Clause protects.") (quoting *Francis*, 942 F.3d at 141); *Hurd*, 984 F.3d at 1085 n.4 ("[F]reedom from unlawful restraint is a right so core to our understanding of liberty that suffering even one day of unlawful detention is a harm recognized by the Constitution.").

Defendants also contend that Plaintiff was afforded all of the process that he was due, arguing that it was his burden to seek relief from the Criminal Court.  Defs. Mem. at 16.  But as discussed in greater detail above, *supra* at 6, the Criminal Court Order made clear that Plaintiff was to be detained "in accordance with the law," not unlawfully over-detained, and Defendants

have cited no authority supporting their rank speculation that an order compelling immediate release was available in that forum.  Moreover, the Second Circuit has cautioned that when adjudicating a procedural due process claim brought by a prisoner, "placing upon him the burden of navigating the legal system, from his prison cell and without counsel . . . does not satisfy the requirements of the Due Process Clause."  *Francis*, 942 F.3d at 144.

Defendants also contend that Plaintiff could have filed an inmate grievance or even called 311.  But DOC's written Inmate Grievance Procedures state expressly in section II.A.7 that "[m]atters outside the Department's jurisdiction," including matters "over which the Department has no authority," are *not* grievable.  *See* DOC Directive 3376R-A (available at

https://www.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf).  The centerpiece of Defendants' "defense" in this case is their contention that the Criminal Court Order and state law supposedly required Plaintiff's over-detention and precluded their ability to release him.  Given that position, there is no basis for this Court to conclude – at all, much less as a matter of law, prior to discovery – that DOC's inmate grievance process was adequate to protect Plaintiff's clearly established liberty interest in avoiding over-detention.  And it is at best disingenuous for Defendants to suggest that calling New York City's general 311 complaint hotline is a meaningful and adequate procedural remedy for a person being over-detained by DOC in violation of the Constitution.

The Due Process Clause required the City to afford a process through which Plaintiff could meaningfully challenge his unlawful over-detention.  Although Plaintiff has no burden to identify hypothetical processes that may have sufficed – at all, much less at the motion to dismiss stage – given the well-pled allegation that the City afforded no meaningful process whatsoever, it is not difficult to conjure the contours of such a hypothetical compliant process.  The City could,

16

for example, add a step to its intake process for newly-sentenced prisoners (as opposed to pre-trial detainees, who form the great majority of DOC's population) through which a newly-sentenced prisoner is asked if he or she believes he or she already has served more time in DOC custody than his or her maximum sentence, and if the answer is yes, there could be an established channel for an appropriately trained official to immediately review the DOC records that Correction Law § 600-a requires DOC to maintain for precisely this reason. The process could afford such a prisoner the right to a prompt hearing if there is disagreement about the data or calculation. To the extent any court order or any state statute purportedly requires consultation with DOCCS, the process could require that such consultation be done promptly. The process could be memorialized in amendments to DOC Directive 3376R-A and published in DOC's Inmate Handbook, such that those in Plaintiff's position are on notice of how to attempt to remedy an unlawful over-detention. These hypothetical procedures are merely illustrative. There are many potential procedural safeguards that could serve to avoid the deprivation Plaintiff suffered here.

Defendants make no effort to engage with the procedural due process analysis required by controlling case law. In *Francis*, the Second Circuit reaffirmed that in determining "what process is due," a court must recognize that "due process is flexible and calls for such procedural protections as the particular situation demands." 942 F.3d at 143-44 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). To assess whether Defendants' procedures meet that flexible standard, this Court must apply the three-factor analysis set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), considering (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the

government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  942 F.3d at 144.

*Francis* involved a state prisoner who alleged that his unlawful over-detention resulted from the defendant correctional officials' failure to afford an adequate process for securing his release.  The Second Circuit held that the defendants had violated the plaintiff's right to procedural due process.  Specifically, the Court held, with respect to the three *Mathews* factors, (1) that "the interest in being free from physical detention by one's own government is the most elemental of liberty interests," and that because "freedom from detention" is "an interest of the highest order," "[t]he importance of the private interest at stake here requires no further elaboration"; (2)(a) that the risk of an erroneous deprivation was "unacceptably high" because "New York has enacted a complex statutory scheme governing the imposition and implementation of criminal sentences" and because "[t]he sentence-calculation procedures on display here involved a coterie of non-lawyers interpreting that statutory scheme and then privileging their understanding of the law"; (2)(b) that the probable value of additional safeguards was "quite high" because such safeguards would have ameliorated the risk of a constitutional deprivation; and (3) the government function at issue "was essentially ministerial" ("effectuating the sentencing court's sentence" and "arranging for transfers between various jurisdictions"), that the "ministerial nature of the role makes the addition of extra levels of procedure particularly feasible," and that any fiscal or administrative burdens would be "negligible."  942 F.3d at 143-45.

Although the defendants in *Francis* were state officials, not local officials, the Second Circuit's application of the *Mathews* factors in that case is closely analogous and, at a minimum, highly instructive.  Given that Defendants themselves rely upon the District Court opinion that

the Second Circuit reversed in *Francis*, Defs. Mem at 13, their failure to acknowledge the

significance of the Second Circuit's analysis and holdings is surprising.

As in *Francis*, Plaintiff has adequately alleged a liberty interest that triggers procedural

due process protections and that Defendants do not afford a process that satisfies the *Mathews*

factors.  Compl. ¶¶ 6, 148-49, 152.

### D.    Plaintiff's Fourth Amendment Claim Is Adequately Pled

A Section 1983 claim for false imprisonment in violation of the Fourth Amendment's

prohibition on unreasonable seizures is subject to substantially the same analysis as the state tort

for false imprisonment under New York law.  *See Wyant v. Okst*, 101 F.3d 845, 852 (2d Cir.

1996); *Mejia v. City of New York*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000) (citing *Singer v.

Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995)).  Under New York law, to state a false

imprisonment claim "a plaintiff must allege (1) the defendant intended to confine the plaintiff,

(2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the

confinement, and (4) the confinement was not otherwise privileged."  *Greenaway v. Cnty. of

Nassau*, 97 F. Supp. 3d 225, 233 (E.D.N.Y. 2015) (citation omitted).  Plaintiff has amply

satisfied this pleading standard, with which Defendants do not even engage.

Instead, Defendants argue that Plaintiff's Fourth Amendment claim should be dismissed

because two district courts addressing claims of prolonged detention concluded that such claims

should be analyzed under the frameworks of the Eighth and Fourteenth Amendments and

because Plaintiff acknowledged in his opposition to Defendants' pre-motion letter that there is no

Second Circuit decision addressing the viability of a Fourth Amendment claim in the context of

detention of individuals who are imprisoned upon being sentenced to less time than the time they

have already served.  Defs. Mem. at 13.  Defendants' position is unpersuasive.  Even in *Fiacco*,

19

the district court denied the defendants' motion to dismiss the Fourth Amendment claim, a ruling

that the Second Circuit did not disturb.  *See Francis v. Fiacco*, 942 F.3d 126, 137 (2d Cir. 2019).

Defendants cite no controlling authority requiring the dismissal of Plaintiff's Fourth

Amendment claim.  Plaintiff has sufficiently pled the elements of this claim, and Defendants'

motion to dismiss it therefore should be denied.

**III.    Plaintiff's Has Adequately Pled Municipal Liability**

A municipality is liable under 42 U.S.C. § 1983 where its official policy or custom has

caused the violation of the plaintiff's constitutional rights.  *See Monell v. Dep't of Soc. Servs. of*

*the City of New York*, 436 U.S. 658 (1978).  Municipalities are never entitled to qualified

immunity.  Rather, a municipality "is liable for even its good faith constitutional violations

presuming that the municipality has a policy that causes those violations."  *Vives v. City of New*

*York*, 524 F.3d 346, 350 (2d Cir. 2008) (citing *Owen v. City of Independence*, 445 U.S. 622, 657

(1980)).

Defendants' brief barely addresses municipal liability, arguing primarily that the question

is moot because there was no underlying constitutional violation, and that Plaintiff's over-

detention supposedly was required by the Criminal Court Order.  Defs. Mem. at 20.  As

discussed above, Plaintiff has adequately alleged numerous constitutional violations, and the

Criminal Court Order is a red herring.  *See supra* at 6-7.

Because Plaintiff has amply and specifically alleged that his constitutional rights were

violated by the City's official policy or custom of continuing to detain individuals who already

have served more time in custody than their maximum sentence, *see* Compl. ¶¶ 45-66, Plaintiff

has adequately pled municipal liability.  *See Hines v. Albany Police Dep't*, 520 Fed. App'x 5, 8

(2d Cir. 2013) (affirming denial of summary judgment on municipal liability claim where

policymaker was found to have made "a deliberate choice to follow a course of action that resulted in the constitutional deprivation [plaintiff] suffered") (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)); *Dudek v. Nassau Cnty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 410-13 (E.D.N.Y. 2013) (denying dismissal of municipal liability claim where plaintiff alleged municipal policy to withhold return of property where the law did not mandate such a policy).

Notably, even if this Court were to hold that the individual Defendants are not liable as a matter of law, there nevertheless still would be municipal liability. *See Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999) ("We agree with our sister circuits that under *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants.") (collecting cases); *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 515 (S.D.N.Y.), *on reconsideration in part*, 133 F. Supp. 3d 563 (S.D.N.Y. 2015) (citing *Askins v. Doe No. 1*, 727 F.3d 248, 254 (2d Cir. 2013)).

## IV.    The Individual Defendants Are Not Entitled to Dismissal at the Pleading Stage

Defendants contend that the Amended Complaint does not adequately allege that the individual Defendants were personally involved in the unconstitutional conduct and that they are entitled to qualified immunity as a matter of law.  Neither contention has merit.

### A.    Personal Involvement

With respect to Defendant Monastero, the Amended Complaint alleges that he was directly involved in the deprivation of Plaintiff's constitutional rights.  Specifically, Defendant Monastero was at the time of Plaintiff's unlawful over-detention the head of DOC's Custody Management Unit and was "extensively involved in all day-to-day DOC custody management

practices, decisions, and actions." Compl. ¶ 21. Defendant Monastero also communicated via email with Plaintiff's criminal attorneys when he claimed that DOC was purportedly unable to release Plaintiff without DOCCS's authorization to do so. *Id.* ¶ 85. These allegations are plainly sufficient to allege Defendant Monastero's personal involvement in the violation of Plaintiff's constitutional rights. *See, e.g. Carter v. Broome Cnty.*, 394 F. Supp. 3d 228, 243 (N.D.N.Y. 2019).

The other individual Defendants (Maginley-Liddie, Molina, Schiraldi, Brann, and Brererton) are current or former high-level DOC officials who the Amended Complaint alleges "create[d] a policy or custom under which unconstitutional practices occurred." *Stone #1 v. Annucci*, No. 20 Civ. 1326, 2021 WL 4463033, at *10 (S.D.N.Y. Sept. 28, 2011) (denying motion to dismiss where plaintiffs alleged that defendants "were personally involved in the creation and maintenance of unconstitutional policies, that they acted with the requisite *mens rea*, and that these policies or customs proximately caused the plaintiffs' injuries"); *see also Myers on behalf of Est. of Myers v. Davenport*, No. 21 Civ. 0922, 2022 WL 3017367, at *8 (N.D.N.Y. July 29, 2022) (denying motion to dismiss where plaintiff adequately alleged that policymaker defendants "were aware of a substantial risk of harm and disregarded that risk by failing to remedy ineffective policy under which the constitutional violation occurred"). Plaintiff has amply satisfied his burden at this stage. *See Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021) (finding general allegations of defendants' knowledge sufficient because "a plaintiff realistically cannot be expected to plead a defendants' actual state of mind") (citations omitted).

B.    **Qualified Immunity**

"When determining a motion to dismiss on qualified immunity grounds in advance of full merits discovery, . . . the question to be answered is whether a reasonable Government officer, confronted with the facts as alleged by plaintiff, could reasonably have believed that his actions did not violate some settled constitutional right."  *Case v. City of New York*, 233 F. Supp. 3d 372, 390 (S.D.N.Y. 2017) (internal quotation marks and citation omitted).  It is undisputable that the Second Circuit clearly established in *Hurd* in 2021 that the unauthorized detention of a person for even one day beyond his maximum sentence inflicts harm of constitutional magnitude.  984 F.3d at 1085 & n.4 (expressly characterizing its holding as announcing a constitutional rule); *see also Matzell*, 64 F.4th at 435-36 (holding that rule in *Hurd* applies to any detention beyond a maximum sentence after January 20, 2021).  The Amended Complaint alleges that the conduct that caused Plaintiff's constitutional harm occurred in 2024.  *See* Compl. ¶¶ 74, 76-77.

Given the clearly established constitutional rule that was announced in 2021, and given that neither the Criminal Court Order nor state law required Plaintiff's continued incarceration past his maximum term of imprisonment, it was objectively unreasonable for Defendants not to release him.  *See Case*, 233 F. Supp. 3d at 390 (denying motion to dismiss on qualified immunity grounds); *Brown v. Coughlin*, 704 F. Supp. 41, 45 (S.D.N.Y. 1989) ("Failure to act while [the defendant] remained imprisoned beyond his release date is not conduct protected by qualified immunity.").

V.    **Plaintiff's Class Allegations Are Adequately Pled**

Finally, Defendants' attack on Plaintiff's class allegations is procedurally defective because they failed to move to strike, which is the recognized procedural mechanism.  Fed. R. Civ. Proc. 23(d)(1)(D).

In any event, motions to strike class allegations are "disfavored" because such motions "require[ ] a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Belfiore v. Procter & Gamble Co*., 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015) (internal quotation marks and citation omitted). Specifically, "in this Circuit, a motion to strike class claims is considered premature if the issues raised are 'the same ones that would be decided in connection with determining the appropriateness of class certification under Rules 23(a) and 23(b).'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013) (citations omitted). A defendant must "demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts Plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding Inc*., 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015); *Reynolds v. Lifewatch, Inc*., 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015). Defendants have not met this high burden because there plainly are issues regarding which Plaintiff needs discovery (such as, for example, how many other individuals were over-detained pursuant to Defendants' policy and practice during the limitations period).

Defendants' objections to Plaintiff's class action allegations certainly cannot be adjudicated on a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Greene v. City of New York*, No. 21 Civ. 5762, 2024 WL 1308434, at *20 (S.D.N.Y. Mar. 26, 2024) (commonality not properly adjudicated at the pleading stage); *Rojas v. Triborough Bridge & Tunnel Auth.*, No. 18 Civ. 1433, 2020 WL 1910471, at *3 (S.D.N.Y. Apr. 17, 2020) (class definition not properly adjudicated at pleading stage); *Petrosino v. Stearn's Prod., Inc.*, No. 16 Civ. 1614349, 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) (class standing not properly adjudicated at the pleading

stage); *Hidalgo v. Johnson & Johnson Consumer Comps., Inc.*, 148 F. Supp. 3d 285, 297

(S.D.N.Y. 2015) (denying motion to strike class allegations as premature at the pre-discovery

pleading stage).

Plaintiff intends to pursue class discovery and to move for class certification as soon as

possible.  At this juncture, Defendants' numerosity, ascertainability, commonality, and

superiority arguments are at best premature.

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny Defendants' motion to dismiss the

Amended Complaint.


DATED:   New York, New York
                November 15, 2024

                                        WANG HECKER LLP


                                        By:    /s/ Alice G. Reiter
                                                Alice G. Reiter
                                                Eric Hecker
                                                Alexander Goldenberg

                                                305 Broadway, Suite 607
                                                New York, New York 10007
                                                (212) 620-2602

                                                *Attorneys for Plaintiff*