UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

JAMES SEABROOK, on his own behalf and on behalf of others similarly situated,

                *Plaintiff*,

-against-

CITY OF NEW YORK; LYNELLE MAGINLEY-LIDDIE; LOUIS MOLINA; VINCENT SCHIRALDI; CYNTHIA BRANN; RONALD BRERERTON; and ANTHONY MONASTERO,

                *Defendants*.

------------------------------------------------------------------------x

24 Civ. 2029 (PKC)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT WITH PREJUDICE**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................iii

PRELIMINARY STATEMENT ........................................................................................ ....1

ARGUMENTS.................................................................. .........................................2

    I.   PLAINTIFF'S CLAIMS FAIL BECAUSE DOC
       WAS ORDERED TO DETAIN HIM...............................................................................2

    II.  DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY..................................4

    III. PLAINTIFF'S EIGHTH AMENDMENT CLAIM SHOULD BE DISMISSED...............6

    IV. PLAINTIFF'S FOURTH AMENDMENT CLAIM SHOULD BE DISMISSED...............6

    V.  PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED.............................7

    VI. PLAINTIFF FAILS TO ALLEGE SUFFICIENT PERSONAL INVOLVEMENT...........9

    VII.  THE CITY OF NEW YORK SHOULD BE DISMISSED............................................... 9

    VIII. THE PURPORTED CLASS ACTION SHOULD BE DISMISSED.............................10

CONCLUSION................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Colson v. Mingo*, No. 18-CV-2765 (JGLC),
2024 U.S. Dist. LEXIS 40969 (S.D.N.Y. Mar. 8, 2024) .................................................................. 8

*Francis v. Fiacco*, No. 15-CV-901,
2018 U.S. Dist. LEXIS 43264 (N.D.N.Y. Mar. 16, 2018) ............................................................... 7

*Francis v. Fiacco*, 942 F.3d 126, 138 (2d Cir. 2019) ..................................................................... 7

*Hurd v. Fredenburgh*, 984 F.3d 1075 (2d Cir. 2021) ..................................................................... 5

*Palm v. Brooks*, No. 2024 U.S. Dist. LEXIS 80508 (S.D.N.Y. May 1, 2024) ............................... 3

*Wallace v. Conroy*, 945 F. Supp. 628 (S.D.N.Y. 1996) ............................................................. 4, 5


**STATUTES**

Fed. R. Civ. P. 23(a) ...................................................................................................................... 10

## **PRELIMINARY STATEMENT**

Perhaps nothing more clearly demonstrates the frivolity of Plaintiff's claims in this action than the criminal court transcript from Plaintiff's sentencing hearing, which Defendants recently obtained, and which shows that **Plaintiff not only understood that he was to be detained after his sentencing, but even anticipated that it "may be two weeks" before he was released**, which is precisely what happened here. Yet, Plaintiff has nevertheless pursued this action, absurdly claiming a violation of his Constitutional rights when his detention was exactly what he expected.

In his opposition, Plaintiff has essentially one central argument – that his detention was "unauthorized" and that an "unauthorized" detention for even one day is unconstitutional, a point that Plaintiff repeats no less than six different times.

However, Plaintiff's detention was not "unauthorized" and, in fact, was mandated by, and indeed only commenced because of, the Criminal Court Order, which Plaintiff disingenuously fails to reference in his pleadings and goes so far as to call "a red herring" in his opposition. However, Plaintiff cannot wish away the Criminal Court Order, no matter how hard he tries. And Plaintiff's arguments show an alarming lack of respect for the sanctity of court orders.

Ultimately, Plaintiff fails to grapple with the real issue in this litigation, which is not whether his detention was "unauthorized," because it was not, but whether the at most 17 days between the time DOC took Plaintiff into custody pursuant to the Criminal Court Order and the time DOC made the necessary notification to DOCCS that Plaintiff was to be transferred constituted an unconstitutional delay. In light of the prevailing case and statutory law, if Plaintiff were to acknowledge the truth, all of his claims would necessarily fail.

Quite simply, the Criminal Court Order mandated Plaintiff's detention, and it mandates the dismissal of all of Plaintiff's claims here. In addition, Plaintiff's claims further fail for a variety

of other reasons, which were previously discussed and are further discussed below. Accordingly, Plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS FAIL BECAUSE DOC WAS ORDERED TO DETAIN HIM

In their initial memorandum, Defendants explained that all of Plaintiff's claims fail because the Criminal Court Order required DOC to detain Plaintiff and deliver him to DOCCS, and, thus, DOC could not have simply released Plaintiff on its own volition, as doing so would have run afoul of the Criminal Court Order; rather, DOC could not release Plaintiff unless and until DOCCS informed DOC that Plaintiff could be released. *See* Defs. Mem. at 7. As soon as DOCCS informed DOC that Plaintiff could be released, Plaintiff was released.

In response, Plaintiff absurdly and misleadingly argues that the Court should disregard the plain and unambiguous language of the Criminal Court Order, which Plaintiff purposely omitted from his pleading, because "it stated expressly that Plaintiff was to be 'released in accordance with the law' and because Defendants never actually delivered Plaintiff to the custody" of DOCCS after DOCCS informed DOC not to transfer Plaintiff and that Plaintiff could be released. Pl. Opp. at 1.

However, the Criminal Court Order clearly directs DOC to deliver Plaintiff to the custody of DOCCS and further states that Plaintiff "is committed to the custody of" DOCCS until DOCCS releases him in accordance with the law. *See* Ex. A. Thus, DOCCS, and not DOC, was granted the authority to determine whether Plaintiff could be released "in accordance with the law." The Criminal Court Order does not grant DOC the discretion to release Plaintiff on its own accord.

Plaintiff further falsely claims that he "became legally entitled to be released as soon as he was sentenced to less time than he already had served." Pl. Opp. at 6. Of course, if that were really true, then the Criminal Court would have ordered Plaintiff's immediate release instead of

2

directing DOC to take Plaintiff into custody and deliver him to DOCCS. Even if the criminal court judge would not say that Plaintiff was legally entitled to be released immediately, how can one expect a correctional facility like DOC to unilaterally make that legal determination?

Notably, Plaintiff understood and expected that he could be detained for the amount of time that he now claims was unconstitutional, which makes Plaintiff's claims in this lawsuit all the more troubling. Indeed, Plaintiff's sentencing hearing transcript makes clear that Plaintiff (who was present at his sentencing hearing) clearly understood and did not even attempt to challenge that, even though he had already "served the entirety of his sentence," under the law, Plaintiff would still be required to be further detained for "administrative" purposes so that DOCCS could "process time" before Plaintiff could "ultimately be released" and that "[i]t may be two days, it may be **two weeks** before he is processed," clearly understanding the significant administrative steps involved in formally transferring an inmate from DOC to DOCCS. Jan. 31, 2024 Transcript at 17:18-18:2, attached to the Dec. 3, 2024 Declaration of Dayrel S. Sewell as Exhibit D (emphasis added).[1]

Moreover, instead of ordering Plaintiff's immediate release, the criminal court judge explicitly ordered his detention, stating that "Mr. Seabrook is going in...for a time calculation" and that Plaintiff will "be released shortly," not immediately. *Id.* at 25:21, 26:10-11. Thus, Plaintiff did not request his immediate release and did not complain about any alleged improper policies, but rather asked that his hair not be cut by DOCCS. *See, e.g., id.* at 18:2-9.

Plaintiff fails to acknowledge that the issue here is not whether Plaintiff was unlawfully detained, as he clearly was not (and his criminal defense attorney knows he was not, despite what his civil attorneys now argue), but rather whether the number of days within which DOC notified

---

[1] The Court may take judicial notice of this transcript because, "[a]t the motion to dismiss stage, courts routinely take judicial notice of state court criminal proceedings, including . . . sentencing transcripts." *Palm v. Brooks*, No. 2024 U.S. Dist. LEXIS 80508, at *3 n.5 (S.D.N.Y. May 1, 2024).

3

DOCCS that Plaintiff was to be transferred to DOCCS custody was so long as to constitute a constitutional violation, as any delay beyond those days would be attributable to DOCCS in determining that Plaintiff could be released and informing DOC of that.

In this regard, *Wallace v. Conroy* is dispositive because it held, *inter alia*, that there is no legal requirement for DOC to transfer a convicted and sentenced inmate within any particular amount of time. *See* 945 F. Supp. 628, 635 (S.D.N.Y. 1996). More importantly, the *Wallace* court dismissed a claim that DOC unconstitutionally delayed a transfer of an inmate to DOCCS for 20 days from the time of sentencing, which is three days longer than the longest possible delay here. *See id.* at 633-35. Notably, Plaintiff acknowledges in his opposition that statutory law only requires DOC to deliver an inmate to DOCCS "forthwith," Pl. Opp. at 12, which the *Wallace* court expressly stated did not "obligat[e] the City to transfer state-ready prisoners within a specified period of time." *Wallace*, 945 F. Supp. at 635.

While Plaintiff attempts to dismiss and distinguish *Wallace*, he does so on completely inapposite and irrelevant grounds. Defendants never claimed that *Wallace* involved an alleged over-detention but that does not matter because the proper question before the Court is whether the alleged (at most) 17-day delay between the time DOC took plaintiff into custody and the time DOC informed DOCCS that Plaintiff was to be transferred to its custody was unconstitutionally long. It was not. And Plaintiff has not and cannot cite to any case that says otherwise.

Accordingly, all of Plaintiff's claims should be dismissed.

## II. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff hardly bothers to respond to Defendants' arguments that they are entitled to qualified immunity, only irrelevantly stating that it is clearly established that the "unauthorized"

4

detention of a person is unconstitutional, even though Plaintiff's detention was expressly authorized and mandated by the Criminal Court Order. Pl. Opp. at 23.

In any event, Plaintiff asks the Court to define the purported clearly established law at an impermissibly high level of generality, without regard to the particular circumstances the Defendants faced (i.e., the existence of a Criminal Court Order directing that Plaintiff be detained).

Indeed, in the very case that Plaintiff so heavily relies on in this regard, and references on over twenty separate occasions in support of his entire opposition, the Second Circuit faulted plaintiff Hurd for trying to do exactly what Plaintiff does here and granted qualified immunity to the defendant as a result. *See Hurd v. Fredenburgh*, 984 F.3d 1075, 1089-92 (2d Cir. 2021). In *Hurd*, the plaintiff argued that the constitutional right at issue there was clearly established because it was well-settled that "no federal, state, or local authority can keep an inmate detained past the expiration of the sentence imposed on them," which is literally almost the exact same argument Plaintiff makes here. *Id.* at 1089-90. However, the Second Circuit rejected the plaintiff's argument, explaining that "the Supreme Court has admonished that rights should not be defined at a high level of generality and instead must be 'particularized to the facts of the case'" and the plaintiff had not cited any clearly established law concerning his particular circumstance – detention past a conditional release date. *Id.* at 1090.

As Defendants explained in their initial memorandum, there is no clearly established law that a correctional facility may disregard a criminal court order and, on its own volition, release an inmate it was directed to take into custody and transfer to another facility. *See* Defs. Mem. at 10-11. There is also no clearly established law that an alleged 17-day delay in transferring an inmate from DOC custody to DOCCS custody is unconstitutional, especially in light of the existing case law to the contrary. *See id.* at 11; *Wallace*, 945 F. Supp. at 635.

5

Plaintiff does not point to any clearly established law finding Defendants' alleged conduct to be unconstitutional under these particular circumstances, or even similar circumstances.

Therefore, Defendants are entitled to qualified immunity and should be dismissed.

## III.  PLAINTIFF'S EIGHTH AMENDMENT CLAIM SHOULD BE DISMISSED

Plaintiff's Eighth Amendment claim is premised entirely on the false assertion that his detention was "unauthorized." Pl. Opp. at 9. However, as explained above, Plaintiff's detention was not only authorized but mandated by the Criminal Court Order, as Plaintiff understood.

Plaintiff's claim further fails because he has not alleged sufficient facts to establish deliberate indifference (nor can he in light of the Criminal Court Order mandating Plaintiff's detention). In their initial memorandum, Defendants explained that Plaintiff's allegations in this regard are conclusory, boilerplate, and insufficiently specific. *See* Defs. Mem. at 12. In response, Plaintiff merely recites his inadequate allegations. *See* Pl. Opp. at 9-10. Notably, Plaintiff fails to point to even one allegation in the Complaint, conclusory or otherwise, that would specifically establish the deliberate indifference of an individually named defendant. *See id.* (referencing allegations concerning the City, DOC, and unspecified "DOC officials").

Accordingly, Plaintiff's Eighth Amendment claim should be dismissed.

## IV.  PLAINTIFF'S FOURTH AMENDMENT CLAIM SHOULD BE DISMISSED

In their initial memorandum, Defendants explained that Plaintiff's Fourth Amendment claim should be dismissed because his allegations that his incarceration exceeded his maximum sentence does not fall within the purview of the Fourth Amendment. *See* Defs. Mem. at 13.

In response, Plaintiff falsely asserts that, in one of the cases Defendants cited, the district court refused to dismiss the plaintiff's Fourth Amendment claim. *See* Pl. Opp. at 19-20. On the contrary, in that case, the district court clearly stated that "Plaintiff's Fourth Amendment claim is

6

dismissed" because "[t]he Court [was] unaware of any decisional law applying the Fourth Amendment in any context similar to the present matter," and, as Plaintiff acknowledges, the Second Circuit did not disturb the district court's ruling regarding the plaintiff's Fourth Amendment claim. *Francis v. Fiacco*, No. 15-CV-901, 2018 U.S. Dist. LEXIS 43264, at *16 (N.D.N.Y. Mar. 16, 2018); *Francis v. Fiacco*, 942 F.3d 126, 138 (2d Cir. 2019) ("The court granted the motion [for summary judgment] with respect to [plaintiff's] Fourth Amendment claim, reasoning that [plaintiff's] allegations of false imprisonment pertained to the lawfulness of his post-conviction detention and therefore fell outside the scope of the Fourth Amendment.").

In his opposition, Plaintiff further discusses the specific elements of his claim but Plaintiff's claim further fails because he cannot meet at least two of them. First, Plaintiff's detention was "privileged" because it was mandated by the Criminal Court Order, and also because it resulted from a conviction. Second, the recently obtained criminal court transcript from Plaintiff's sentencing hearing establishes that Plaintiff understood that he needed to be further detained and understood that it "may be two weeks" before he was released, and that Plaintiff did not challenge this potential two week detention with the criminal court judge. *See* Ex. D. Thus, Plaintiff can be said to have consented, or at least acquiesced, to the detention he now challenges.

Accordingly, Plaintiff's Fourth Amendment claim should be dismissed.

## V.    PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED

Plaintiff's substantive due process claim fails because he has not demonstrated that a detention mandated by a Criminal Court Order shocks the conscience. In his opposition, Plaintiff focuses on the detention alone, without any regard whatsoever to how that detention came to pass.

As to his procedural due process claim, Plaintiff fails to properly address Defendants' arguments that his claim fails because he did not have a sufficient liberty interest in, *inter alia*, being released in contravention of the Criminal Court Order. *See* Defs. Mem. at 15. Instead, Plaintiff argues that an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment. *See* Pl. Opp. at 15. Defendants agree, but that is not the issue.

Plaintiff's arguments concerning why DOC's grievance procedures (that he, notably, did not even attempt to utilize)[2] were insufficient are also telling and underscore why all of Plaintiff's claims should be dismissed. Plaintiff argues that DOC's grievance procedures were insufficient because they expressly state that matters outside its jurisdiction, including matter over which it has no authority, are not grievable. *See* Pl. Opp. at 16. Yet, Plaintiff's entire case is based on the assertion that DOC chose to unlawfully detain him and had the authority to release him at any time. Plaintiff cannot have it both ways.

Moreover, Plaintiff's arguments in this regard also misunderstand the available procedures. DOC's grievance procedures make clear that, even if a specific type of complaint is not "grievable," it is not simply ignored but rather directed to another unit for investigation. Plaintiff's rebuke of the sufficiency of 311 calls is also misplaced as a 311 call is merely another method by which an inmate may file and initiate a complaint, which is then subsequently investigated.

Quite simply, Plaintiff has not properly explained why, assuming *arguendo* that DOC had the ability to release Plaintiff on its own accord, making a complaint to DOC through its established complaint procedures was insufficient.

Plaintiff also fails to address the fact that, under his view of the facts here, the process which he chose to engage (i.e., emailing DOC staff) led to his release from detention.

---

[2] Plaintiff's failure in this regard is also fatal to all of his claims. *See, e.g., Colson v. Mingo*, No. 18-CV-2765 (JGLC), 2024 U.S. Dist. LEXIS 40969, at *20-24 (S.D.N.Y. Mar. 8, 2024).

8

Accordingly, Plaintiff's due process claims should be dismissed.

## VI. PLAINTIFF FAILS TO ALLEGE SUFFICIENT PERSONAL INVOLVEMENT

In their initial memorandum, Defendants explained that Plaintiff failed to sufficiently allege the personal involvement of any of the individual defendants, and largely relied on conclusory and literally copy-and-paste, boilerplate allegations. *See* Defs. Mem. at 18-19. Ironically, in response, Plaintiff merely repeats his insufficient allegations and argues, in conclusory fashion, that his "allegations are plainly sufficient" and that he has "amply satisfied his burden at this stage." Pl. Opp. at 21-22.

Plaintiff does not squarely address any of Defendants' arguments and the fact remains that Plaintiff cannot rely on such non-specific, conclusory and boilerplate allegations to establish personal involvement. In the cases Plaintiff cites in support of his arguments, the plaintiffs alleged far more facts to avoid dismissal.

Accordingly, the individual Defendants should be dismissed.

## VII. THE CITY OF NEW YORK SHOULD BE DISMISSED

Plaintiff faults Defendants for "barely address[ing] municipal liability" while completely ignoring that Plaintiff has not pled a municipal liability claim. Pl. Opp. at 20. Indeed, whereas Plaintiff specifically delineated four causes of action in his Amended Complaint, he deliberately chose not to delineate a cause of action for municipal liability. *See generally*, Amended Complaint.

Nevertheless, even had Plaintiff properly asserted a municipal liability claim, it would still be subject to dismissal. First, as discussed, Plaintiff has failed to sufficiently plead an underlying constitutional violation in light of the Criminal Court Order's mandate that DOC take Plaintiff into custody and deliver him to DOCCS. For this reason, Plaintiff also cannot establish that any alleged policy or practice was the "moving force" behind any alleged constitutional violation, even if he

9

could establish one, because it was the Criminal Court Order, and, more precisely, the applicable law, that led to Plaintiff's detention. Moreover, Plaintiff's allegations regarding this "claim" are conclusory, boilerplate and insufficiently specific.

Accordingly, the City of New York should be dismissed.

## VIII. THE PURPORTED CLASS ACTION SHOULD BE DISMISSED

In their initial memorandum, Defendants explained that Plaintiff cannot maintain a class action for three independent reasons: (i) Plaintiff lacks standing because all of his claims fail, (ii) Plaintiff is not a member of his proposed class, and (iii) Plaintiff fails to sufficiently plead the prongs of Fed. R. Civ. P. 23(a). *See* Defs. Mem. at 21-25.

In response, Plaintiff does not even attempt to argue that the purported class action is proper. Rather, Plaintiff instead argues solely that Defendants' arguments are premature.

However, as Plaintiff acknowledges, Plaintiff's class claims may be stricken at this stage if it would be impossible to certify the alleged class regardless of the facts Plaintiff may be able to obtain during discovery. *See* Pl. Opp. at 24. While Defendants acknowledge it is a rare case where this standard is met, this is one of those cases.

In addition to the fact that all of Plaintiff's claims should be dismissed and, thus, Plaintiff lacks standing to bring the purported class action, Plaintiff is clearly not a member of his proposed class and no amount of discovery would change that fact. As previously explained, Plaintiff was not detained by DOC past the date on which he was "entitled to conditional release." *See* Defs. Mem. at 21. Moreover, there are other hurdles Plaintiff will not be able to overcome, even with the benefit of class discovery, such as, for example, the lack of commonality and superiority. Indeed, Plaintiff essentially acknowledges as much, specifically arguing only that Plaintiff needs class discovery to determine "how many other individuals were over-detained." Pl. Opp. at 24.

10

Accordingly, Plaintiff's class claims should be dismissed and/or stricken.

## CONCLUSION

For the foregoing reasons, and for those outlined in their initial memorandum, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint with prejudice, together with such costs, fees, and any other relief as this Court deems just and proper.

Dated:   Brooklyn, New York
         December 3, 2024

**LAW FIRM OF DAYREL SEWELL, PLLC**
*Attorneys for Defendants*
599 E. 2nd Street
Brooklyn, New York 11218
Tel.: (347) 787-6824
E-mail: info@sewellnylaw.com

By: _____/s/_____
   Dayrel S. Sewell, Esq., MPH
   Min Jung Kim, Esq.

cc:   **VIA ECF**
      All Attorneys of Record

11